ERDELJOHN, APPELLANT, *v.* OHIO STATE BD. OF PHARMACY, APPELLEE.

(No. A-86-05781—Decided April 30, 1987.)

Court of Common Pleas of Hamilton County.

*David L. Kerr,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Yvette M. McGee,* for appellee.

CRUSH, J. This matter is before the court upon an appeal from an order dated July 14, 1986, of the State Board of Pharmacy, suspending appellant's pharmacist identification card and fining him $2,500.

The findings upon which the suspension and fine were based are, briefly stated, as follows:

(1) That appellant, Daniel E. Erdeljohn, as the responsible pharmacist, was responsible for Alexanders Pharmacy's selling misbranded drugs on four occasions between March 26, 1984 and May 8, 1984;

(2) That appellant, as the responsible pharmacist, was responsible for Alexanders Pharmacy's selling fifty cycles of Lo-Ovral-28, a misbranded drug, on April 4, 1983;

(3) That appellant, as the responsible pharmacist, was responsible for Alexanders Pharmacy's selling twenty-five cycles of Norinyl, a misbranded drug, on December 6, 1983; and

(4) That appellant personally sold, or aided and abetted other pharmacists in selling, 1692 tablets of Obetrol, without written or other prescriptions, on various occasions between May 10, 1984 and December 12, 1984.

Appellant raises several issues.

## VAGUENESS OF STANDARDS

The pharmacy board found that appellant's actions constituted dishonesty and unprofessional conduct. R.C. 4729.16(A)(2) provides that a pharmacist's identification card may be suspended if he is "guilty of dishonesty or unprofessional conduct in the practice of pharmacy." Appellant argues that "unprofessional conduct" (and "gross immorality" in the same section of the code) are vague standards and, thus, unconstitutional.

Persuasive on this issue, in the opinion of the court, is *Ohio State Bd. of Pharmacy* v. *Lewandowski* (Aug. 17, 1984), Lucas App. No. L-84-072, unreported. *Lewandowski*, in turn, quotes *Lies* v. *Veterinary Medical Bd.* (1981), 2 Ohio App. 3d 204, 208-209, 2 OBR 223, 228, 441 N.E. 2d 584, 589-590, as follows:

" 'We believe that when an applicant may practice a profession only after he * * * qualifies and is licensed under a set of standards * * *, phrases that in other contexts may be vague * * * acquire a certainty that is, prima facie, sufficient to advise the practitioner about what conduct is forbidden.' "

*Lewandowski* reviews a number of similar phrases pertaining, by statute, to various professions: "gross incompetency," "incompetency," "unfit," and "immoral or unprofessional conduct." *Lewandowski* considers such phrases as passing constitutional muster; and as some of the phrases are identical to those at issue in this matter, this court believes that R.C. 4729.16 is not vague, but is, in fact, constitutional.

## STATUTE OF LIMITATIONS

Appellant argues that the proceedings here should be barred because of the limitations period applicable to prosecution of criminal misdemeanors.

Appellant concedes that there is no statutory limitation period pertaining to these proceedings, but requests the court to infer, and thus, to create one.

No authority has been cited, nor does the court find any, which authorizes the court to create a statute of limitations. Such matters are legislative, not judicial. It is informative to note that the legislature has, in some instances, created two statutes of limitation — one civil, one criminal — with different limitations periods: *e.g.,* assault. The court finds appellant's argument on this point without merit.

## SEARCH AND SEIZURE

The court finds that all searches and seizures involved here were with consent of the appellant and statutorily justified. The court finds no error here.

## SCOPE OF REVIEW

It is undisputed that the relevant scope of review by this court is whether the board's findings are "supported by reliable, probative, and substantial evidence and [are] in accordance with law." R.C. 119.12.

## HEARSAY

The most difficult part of this appeal pertains to hearsay testimony. The entire transcript is replete with hearsay and inferences upon hearsay or other inferences:

(1) Fourth charge (sale of Obetrol). This charge is based upon (a) an anonymous letter, not produced at the hearing, which allegedly was "aimed at" Daniel Erdeljohn and allegedly stated that a sample audit "may turn up some facts"; (b) the fact that the Obetrol records at the pharmacy were disorganized; and (c) the fact that about 1600 Obetrol tablets were missing.

Appellant testified that he never dispensed Obetrol without a prescription and had no reason to believe that anyone else in the store did so; that

several subjects could have stolen Obetrol because of access to the area where it was kept; that a named individual who had a grudge against him made threats against him; that, in his opinion, he knew who typed the anonymous letters, to wit: a man he had accused of stealing. There was testimony that there is, generally, a "lot of theft" of drugs by people with access to them. No direct evidence was presented that appellant dispensed Obetrol without a prescription.

(2) Third charge (sale of Norinyl). This charge is based upon the fact that Norinyl was dispensed by the pharmacy (not improperly packaged); that a Mr. Mlinar, president of Tri-State Pharmaceutical, was reported to have allegedly stated that his company sold birth control products only as samples or clinic packs, and that appellant had altered their appearance to conceal their nature as samples and clinic packs; that Mlinar was reported to have allegedly stated that he had advised the pharmacy prior to sale that the shipment would be of mislabeled clinic packs or samples; and that appellant admitted that he saw some Norinyl in the pharmacy supplies, the packages of which had been altered or whited out or scratched.

Appellant denied dispensing anything that was so marked.

There is no direct evidence as to how many samples or clinic packages the pharmacy had, or whether any had been, in fact, dispensed.

(3) Second charge (sale of Lo-Ovral 28). The statements as to the third charge basically apply here.

(4) First charge (sale of misbranded drugs). The statements as to the second and third charges apply here.

In brief, the only direct evidence of any of the charges is that there was a quantity of Obetrol not accounted for at the pharmacy, and that appellant had seen in the pharmacy some packets of drugs that had markings on them as sample or clinic packets; but neither the number of packets nor what was done with them was established.

Obviously, if hearsay is not permitted before the pharmacy board, then none of the charges has been proven.

Hearsay is clearly admissible at administrative hearings:

"Appellee filed a claim for unemployment compensation benefits. * * * The referee affirmed the administrator's denial of benefits * * *.

"Further appeal to the Board of Review was disallowed and the claimant appealed to the Common Pleas Court * * *.

"* * * [E]vidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account * * * where relaxed rules of evidence are applied. * * *" Simon v. Lake Geauga Printing Co. (1982), 69 Ohio St. 2d 41, 42, 44, 23 O.O. 3d 57, 58, 59, 430 N.E. 2d 468, 469, 470.

The Simon case, however, pertained to an unemployment compensation claim wherein the statute itself (R.C. 4141.28[J]) provides for the admission of hearsay. The consensus of authorities on the subject makes it evident that hearsay is not admissible willy-nilly at administrative hearings:

"* * * [E]ven though a portion of the employer's evidence which was before the administrator may constitute inadmissible hearsay if a higher standard of review is applied, this evidence was not objected to by the claimant, nor was its inclusion in the record set forth as an assignment of error * * *." Simon v. Lake Geauga Printing Co., supra, at 45, 23 O.O. 3d at 60, 430 N.E. 2d at 471.

"Although the board [Ohio State Medical Board] need not strictly follow technical rules applicable in a judicial hearing, * * * substantial compliance with those rules will better facilitate a

proper hearing." *Ohio State Medical Bd.* v. *Zwick* (1978), 59 Ohio App. 2d 133, 141, 13 O.O. 3d 178, 182, 392 N.E. 2d 1276, 1281.

"On the basis of our independent review of the record, we must agree that the Commission did, on occasion, permit a witness to relate hearsay testimony * * *. At the ensuing hearing before the Civil Service Commission, relevant and competent evidence deriving largely from personal knowledge was adduced from no less than three * * * employees who had contact with Hurt to substantiate those multiple instances of misconduct * * *. Under these circumstances, we cannot say that the sporadic occurrence of improper testimony resulted in any prejudice to Hurt." *Hurt* v. *Cincinnati Civil Serv. Comm.* (Aug. 15, 1984), Hamilton App. No. C-830812, unreported, at 4-5.

"The hearsay rule is relaxed in administrative proceedings, but the discretion to consider hearsay cannot be exercised in an arbitrary manner." *Haley* v. *Ohio State Dental Bd.* (1982), 7 Ohio App. 3d 1, 7 OBR 1, 453 N.E. 2d 1262.

"Appellant, * * * a registered pharmacist, * * * appealed * * * the revocation of his registration card."

"The record before the appellee does contain hearsay evidence in the form of statements from doctors that many prescriptions filled by appellant were forged. There is no evidence or even an inference in the record that these statements by the doctors are not reliable * * *.

"* * * In this case, the truthfulness of the statements was not questioned by the evidence.

"We agree with appellant that the hearsay rule is relaxed in administrative proceedings, but the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner. *Haley* v. *Ohio State Dental Bd.* (1982), 7 Ohio App. 3d 1.

"We hold that the continued use of hearsay evidence to support the conclusion and order of an administrative agency whose jurisdiction to adjudicate is granted by R.C. 119.01 to 119.13 *once the truth of the hearsay is placed in issue by the evidence of one of the parties would be arbitrary.*

"Under the facts in this record, the truth of the hearsay was not placed in issue; therefore, the appellee did not act arbitrarily * * *." (Emphasis added.) *Gilford* v. *Ohio State Bd. of Pharmacy* (Feb. 6, 1985), Montgomery App. No. 8979, unreported, at 1, 6-8.

In the case before the court, virtually the entire case against appellant was based on hearsay. So significant is the hearsay evidence that, without it, one would be hard pressed to know why the appellant was charged with anything. The hearsay involved the testimony of significant witnesses and the contents of essential documents. All the hearsay was denied by the appellant who gave facially reasonable explanations clearing himself of wrongdoing.

Admittedly, a pharmacy board is not expected to know the details of the Rules of Evidence; but its conduct of a disciplinary hearing must fall somewhere within the ambit of fair play as developed through centuries of Anglo-American jurisprudence. The virtually exclusive use of hearsay and inferences thereon found in this case has, in this court's opinion, denuded the significant evidence of any probative value and further demonstrates arbitrariness in an extreme degree.

In summation, the court finds that the order of the State Board of Pharmacy, issued on July 14, 1986, is not supported by reliable, probative and substantial evidence, and is hereby reversed.

*Order reversed.*