SOUTHERN OHIO COAL COMPANY, Appellant,

v.

KIDNEY et al., Appellees.

[Cite as *S. Ohio Coal Co. v. Kidney* (1995), 100 Ohio App.3d 661.]

Court of Appeals of Ohio,
Fourth District, Meigs County.

No. 93 CA 522.

Decided Jan. 11, 1995.

662

*David M. Cohen; Porter, Wright, Morris & Arthur* and *David A. Laing,* for appellant.

*James M. Harrison* and *James M. Guthrie,* Assistant Attorneys General, for appellee Paul Kidney.

*Thomas M. Myers,* for appellee United Mine Workers of America.

---

GREY, Judge.

This is an appeal from the Common Pleas Court of Meigs County. The Southern Ohio Coal Company ("SOCC") sued Paul Kidney, Chief of the Division of Mines, requesting injunctive relief from the requirement that certain areas of gaseous mines be inspected every three days. The United Mine Workers of America ("UMWA") was not a party to this action. Prior to trial, Kidney and SOCC reached an agreement and the court issued a consent judgment that allowed inspections every seven days. After the judgment was journalized, the UMWA filed a motion to intervene and told Kidney it was opposed to the agreement. Kidney, who had thought the union was satisfied with the agreement, filed a motion requesting Civ.R. 60(B) relief from judgment. Both motions were granted by the trial court, and SOCC appeals. We affirm.

SOCC operates coal mines, and the UMWA represents the miners who work there. Kidney is the chief administrative officer in charge of the Division of Mines for the state of Ohio. SOCC's No. 2 and No. 31 mines are classed as gaseous mines under R.C. 4153.02. Certain parts of these mines that are not being mined can be used and are safe as long as they are ventilated and the gases are removed. R.C. 4153.24(B) requires that intake and return airways of gaseous mines be inspected every three days.

On November 8, 1983, SOCC approached the Division of Mines and requested a variance to permit examination of the intake and return airways every seven days, rather than every three days as required under R.C. 4153.24(B). It based its request on Section 863(f), Title 30, U.S.Code which allows for a seven-day inspection period. On November 23, 1983, the variance was granted by Charles Williams, then Chief of the Division of Mines.

In 1989, Rothwell, a deputy mine inspector, found that certain areas of the No. 2 mine, known as seals and bleeders, were not being inspected every three days, as required. Rothwell noted that SOCC had not requested a variance for seals and bleeders and that the variance did not extend to seals and bleeders.

On June 1, 1989, SOCC then requested a variance for seals and bleeders in accordance with the seven-day inspection period as previously granted. On June 17, 1989, Warren Ellis, then Chief of the Division of Mines, refused the request

and terminated the prior variance for No. 2 mine. In August 1989, Rothwell twice issued notices of violation on the grounds that SOCC was not following the required three-day inspection routine. On October 11, 1989, the variance for No. 31 mine was terminated.

Kidney, an appellee in this case, succeeded Ellis as chief of the division of mines, and was contacted by the UMWA, which expressed its concern about the dangers of a seven-day inspection period and its satisfaction with the three-day inspection schedule. On March 4, 1992, SOCC met with Kidney to discuss the inspection schedule. Kidney, based on the union's concern, reaffirmed the mandatory three-day inspection. On September 25, 1992, SOCC filed a complaint requesting declaratory and injunctive relief, arguing that the three-day requirement was unduly burdensome.

The union did not intervene in the action because it believed, based upon its prior discussions with Kidney, that the state would refuse to reinstate the seven-day inspection period. Kidney, who heard nothing more from the union regarding the matter, believed the union's position had changed and that it was satisfied with the seven-day inspection period. Based on this belief, Kidney and SOCC reached an agreement. On January 22, 1993, the court, based on agreement of the parties, issued a consent judgment.

In its entry the court stated:

"It is hereby determined and declared that 'old parts of the mine not in the actual course of working, but which are open and safe to travel,' as set forth in Section 4153.24(B), does not pertain to, include, or encompass the intake and return airways and/or the primary, secondary or other escapeways (as referenced in and mandated by Ohio Rev.Code Section 4153.18) of Ohio's underground coal mines, including Plaintiff's Meigs No. 2 and No. 31 Mines. Hence, these areas are not subject to the frequency of inspection (not less than once each three days) referenced in Section 4153.24(B), and Defendants' enforcement of Section 4153.24(B) shall be consistent with this Consent Judgment.

"The parties hereto further stipulate, and the Court so finds, that the bleeder evaluation points, evaluation points for abandoned areas, and the seals at Meigs No. 2 and Meigs No. 31 Mines are 'old parts of the mine not in the actual course of working, but which are open and safe to travel,' thus subject to examination under Section 4153.24(B) not less than once each three days."

On February 22, 1993, the UMWA filed a motion to intervene. The union asserted that the consent judgment had been entered without its approval or involvement and substantially impaired the safety of its members. On the same day, the union, which was not a party to the consent judgment, filed a notice of appeal with this court. That appeal was dismissed.

On March 10, 1993, the motion to intervene was granted. On April 8, 1993, SOCC filed a notice of appeal challenging the grant of the union's motion to intervene. On June 15, 1993, Kidney, based on his new understanding that the union did, in fact, oppose the seven-day inspection period, filed a Civ.R. 60(B) motion for relief from judgment. On November 17, 1993, the trial court granted the Civ.R. 60(B) motion, and again granted the union's motion to intervene.

SOCC timely filed a notice of appeal challenging the grant of the Civ.R. 60(B) motion and the grant of the union's motion to intervene.

 We begin by noting our jurisdiction. The grant of a motion to intervene is a final appealable order. See *Fairview Gen. Hosp. v. Fletcher* (1990), 69 Ohio App.3d 827, 591 N.E.2d 1312. Likewise, the grant of a Civ.R. 60(B) motion is a final appealable order. See *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. Since the grant or denial of both motions constitutes final appealable orders, this appeal is properly before us.

First Assignment of Error

"The trial court erred in granting defendants-appellees' motion for relief [*sic*] consent judgment where there was no demonstration or even allegation of fraud by defendants-appellees."

Civ.R. 60(B) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

 A motion for relief from judgment pursuant to Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not

be disturbed on appeal absent a showing of an abuse of discretion. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1124; *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 66, 18 OBR 96, 98, 479 N.E.2d 879, 882. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30–31; *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate (1) a meritorious claim or defense, (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566–567, citing *GTE Automatic Elec., Inc., supra,* 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. See, also, *Buckeye Fed. S. & L. Assn. v. Guirlinger* (1991), 62 Ohio St.3d 312, 581 N.E.2d 1352. If any of these three requirements is not met, the motion should be overruled. *Rose Chevrolet, supra,* at 20, 520 N.E.2d at 566–567, citing *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 6 OBR 403, 453 N.E.2d 648; *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 607 N.E.2d 914. Furthermore, if the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civ.R. 60(B), the trial court should grant a hearing to take evidence and verify those facts before it rules on the motion. *Coulson v. Coulson* (1983), 5 Ohio St.3d 12, 16, 5 OBR 73, 76–77, 448 N.E.2d 809, 812–813. In other words, the movant is entitled to an evidentiary hearing only where the Civ.R. 60(B) motion for relief from judgment and attached evidentiary material contain allegations of operative facts which would warrant relief under Civ.R. 60(B). *In re Shell* (Oct. 2, 1992), Fairfield App. No. 12–CA–92, unreported, 1992 WL 307869; *Twinsburg Banking Co. v. RHEA Constr. Co.* (1983), 9 Ohio App.3d 39, 9 OBR 41, 458 N.E.2d 440.

In its first assignment of error, SOCC argues that Civ.R. 60(B) cannot be used to defeat a consent judgment unless there is an allegation of fraud, *i.e.,* Civ.R. 60(B)(3). In other words, a consent judgment acts as a super judgment, immune from attack absent an allegation of fraud in its procurement. See 63 Ohio Jurisprudence 3d (1985) 46–47, Judgments, Section 273. SOCC cites *Sponseller v. Sponseller* (1924), 110 Ohio St. 395, 144 N.E. 48; *Schenk v. Mohre* (Oct. 28, 1983), Wood App. No. WD–83–33, unreported, 1983 WL 6982; and *Mack v. Mack*

(Sept. 28, 1987), Richland App. No. CA–2479, unreported, 1987 WL 18620, to support its position.

In *Schenk*, the Sixth District cited *Sponseller* and denied Civ.R. 60(B) relief because there was an absence of fraud. In *Mack*, the Fifth District cited *Sponseller* and denied Civ.R. 60(B) relief, stating, "As a matter of record, appellant's 60(B) motion filed December 31, 1986 contains no allegation or contention of fraud, which, as stated, would be the only ground available triggering a review of a consent agreement."

*Sponseller*, although it predates the adoption of Civ.R. 60(B) by forty-six years, was cited in *In re Gilbraith* (1987), 32 Ohio St.3d 127, 129, 512 N.E.2d 956, 959, an action in parentage, in which the Supreme Court stated:

"[A]s a general rule, a consent judgment operates as *res judicata* with the same force given to a judgment entered on the merits in a fully adversarial proceeding. See *Vulcan, Inc. v. Fordees Corp.* (C.A.6, 1981), 658 F.2d 1106 (strong public interest in achieving finality in litigation is advanced by giving *res judicata* effect to consent decrees). Implicit in the rule is the recognition that a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment. *Sponseller v. Sponseller* (1924), 110 Ohio St. 395, 399, 144 N.E.48, 50. See, also, *Ohio State Medical Bd. v. Zwick* (1978), 59 Ohio App.2d 133, 139–140, 13 O.O.3d 178, 181–182, 392 N.E.2d 1276–1280."

*Gilbraith* stands for the proposition that a consent judgment is as valid as if the cause had been fully adjudicated on its merits. Simply put, it is no different from any other judgment.

The policy in Ohio is to decide cases on their merits and to afford Civ.R. 60(B) relief where equitable. In *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134, 616 N.E.2d 869, the Supreme Court ruled that Civ.R. 60(B) is to be liberally construed with a view to effecting just results. See, also, *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 18 O.O.3d 442, 416 N.E.2d 605; *Rose Chevrolet, supra,* 36 Ohio St.3d at 21, 520 N.E.2d at 567. In *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469, the court held that Civ.R. 60(B) applies to all judgments. Thus, under these holdings, a consent judgment would be open to Civ.R. 60(B) relief as much as any other judgment. Under the terms and conditions of that rule, of course, it would be very difficult to qualify a consent judgment for relief, but Civ.R. 60(B) relief may be allowed in a proper case.

■ We do not find that the trial court erred, *per se,* in granting Civ.R. 60(B) relief from a consent judgment. SOCC's first assignment of error is not well taken and is overruled.

■ While relief from a consent judgment may be granted in a proper case, we must now turn to the question of whether the case before this court is such a proper case. We will consider SOCC's second, third and fifth assignments of error jointly because they each raise facets of the requirements for relief from judgment pursuant to Civ.R. 60(B).

Second Assignment of Error

"The trial court erred in granting defendants-appellees' motion for relief from consent judgment where defendants-appellees failed to demonstrate they had a meritorious claim or defense to present if relief was granted but, rather, affirmed their agreement with the consent judgment."

Third Assignment of Error

"The trial court erred in granting defendants-appellees' motion for relief from consent judgment where defendants-appellees failed to demonstrate their entitlement to relief under Civ.R. 60(B)(1) or (B)(5)."

Fifth Assignment of Error

"The trial court erred in granting defendants-appellees' motion for relief from consent judgment where defendants-appellees did not file their motion within a reasonable time after entry of the consent judgment."

In its second, third and fifth assignments of error SOCC says the defendants did not meet the prongs of the *GTE Automatic Electric* test.

In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate (1) a meritorious claim or defense, (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. *Rose Chevrolet, supra,* 36 Ohio St.3d 17, 520 N.E.2d 564; *GTE Automatic Elec., supra,* 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. If any of these three requirements is not met, the motion should be overruled. *Id.*

In his Civ.R. 60(B) motion, Kidney stated that it was only after the consent judgment had been entered that he learned the UMWA was objecting to the change in inspection standards. He said the judgment should be set aside in the interest of justice to give the intervenors an opportunity to present evidence relating to the frequency of the inspections and the safety of the mine. Kidney said he consented to the judgment because he mistakenly thought, having not heard from the union, that it no longer opposed the seven-day inspection period.

■ When reviewing the grant or denial of Civ.R. 60(B) relief, we must determine whether the trial court abused its discretion. *Griffey, supra.* When determining whether the court abused its discretion, we consider the totality of the circumstances, *Keffer v. Keffer* (Oct. 28, 1991), Pickaway App. No. 90 CA 37, unreported, 1991 WL 224162, and Kidney's status as Chief of the Division of Mines is an important circumstance.

Mining has been classed as an inherently dangerous industry and is closely regulated to protect the public health and safety. *Keystone Bituminous Coal Assn. v. DeBenedictis* (1987), 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472; *Donovan v. Dewey* (1981), 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262. R.C. Chapters 4151, 4153, 4155 and 4157 regulate mining in the state of Ohio. The Division of Mines has jurisdiction over all mines and quarries located in the state of Ohio. R.C. 4151.02. The Chief of the Division of Mines is charged, by statute, with promulgating and enforcing the rules and regulations pertaining to the mines, and the safety of those who work those mines. The authority of the Chief of the Division of Mines and the duties placed upon him by statute, R.C. 4151.04, cannot be abdicated, but must be exercised with due regard for those who own or operate the mines and those who work in them. It is with these circumstances in mind that we address the balance of SOCC's assignments of error.

■ Liberally construing Civ.R. 60(B), as we must, Kidney's situation fits under Civ.R. 60(B)(1), surprise or mistake. Since his job includes establishing the mining rules to provide for the safety of Ohio miners, the perceptions of the miners as to what they consider safe is of crucial importance in setting the standards. We further believe that Kidney has a meritorious defense to SOCC's action, *i.e.,* the duty imposed on him by statute. SOCC's second and third assignments of error are not well taken and are overruled.

■ The reason for requiring a timely Civ.R. 60(B) filing is that there must be finality in every case. *Gilbraith, supra; Adomeit, supra,* 39 Ohio App.2d at 100, 68 O.O.2d at 253, 316 N.E.2d at 473. The consent judgment was filed on January 22, 1993. On February 22, 1993, the union filed a notice of appeal in this court and a motion to intervene in the lower court, which was granted about two weeks later. Kidney did not seek to set aside the consent entry at that time. On June 15, 1993, when it appeared that the issue of mine safety had not been resolved, Kidney filed a Civ.R. 60(B) motion. There is nothing in the record to indicate that this four-month interlude between the judgment and the Civ.R. 60(B) filing is excessive. SOCC's fifth assignment of error is not well taken and is overruled.

Fourth Assignment of Error

"The trial court erred in granting defendants-appellees' motion for relief from consent judgment where defendants-appellees failed to include therewith any evidentiary materials presenting operative facts in support of their motion."

In its fourth assignment of error, SOCC argues that the defendants did not supply any evidentiary material to merit relief from judgment. SOCC cites *E. Ohio Gas Co. v. Walker* (1978), 59 Ohio App.2d 216, 13 O.O.3d 234, 394 N.E.2d 348, and *Adomeit, supra,* to support its position.

In *E. Ohio Gas Co.,* the court affirmed the denial of Civ.R. 60(B) relief because Walker failed to present, in evidentiary form, operative facts demonstrating that she had a meritorious defense to present if relief was granted. While denying Civ.R. 60(B) relief, the court in *E. Ohio Gas Co.* reversed and remanded and ordered a new trial pursuant to Civ.R. 59(A). In a footnote at 59 Ohio App.2d at 221, 13 O.O.3d at 237, 394 N.E.2d at 351–352, the *E. Ohio Gas Co.* court noted, "The existence of Local Rule 11 makes our holding herein consistent with *Matson v. Marks* (1972), 32 Ohio App.2d 319 [61 O.O.2d 476, 291 N.E.2d 491], wherein the court held that the submission of affidavits or other evidentiary materials is not required with a motion for relief from judgment 'until required to do so either by rule or order of the court.' "

In *Adomeit, supra,* the court stated in paragraph four of its syllabus:

"If the material submitted by the movant in support of a motion for relief from judgment under Civil Rule 60(B) contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to overrule the motion and refuse to grant a hearing."

*E. Ohio Gas Co., Matson* and *Adomeit* stand for the proposition that a Civ.R. 60(B) motion is properly denied when the moving party fails to present evidentiary material after being ordered to do so by the court. These cases do not stand for the proposition that the court must order evidentiary materials or that a court abuses its discretion in failing to require additional evidentiary materials, particularly where the grounds are obvious.

SOCC's fourth assignment of error is not well taken and is overruled.

Sixth Assignment of Error

"The trial court erred in granting a second motion to intervene of Local Unions 1857 and 1886, United Mine Workers of America, where the motion to intervene was untimely, failed to conform with Civ.R. 24(C), and failed to demonstrate that defendants-appellees did not adequately represent the interests of the intervenors."

In its sixth assignment of error, SOCC says the court should not have granted the union's motion to intervene because it was untimely, *i.e.,* filed after the judgment entry, and because it did not comply with Civ.R. 24(C).

Timeliness of the filing of a motion to intervene is a matter within the sound discretion of the trial judge, and the trial court's decision will be reversed only upon a showing of an abuse of that discretion. *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d 350, 352, 29 OBR 479, 480–481, 505 N.E.2d 1010, 1012–1013.

In *Fouche v. Denihan* (1990), 66 Ohio App.3d 120, 122–123, 583 N.E.2d 457, 458–459, citing *Blackburn, supra,* the court noted the necessary elements demonstrating a right to intervene:

" ' * * * [T]he application must be timely and the applicant must show three conditions exist:

" ' " * * * (1) that he claims an interest relating to the property or transaction which is the subject of the action; (2) that he is [so] situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and (3) that the existing parties do not adequately represent his interest." (Footnote omitted.) McCormac, Ohio Civil Rules Practice (1970) 80–81, Section 4.36.' *Id.* at 352, 29 OBR at 481, 505 N.E.2d at 1013.

" ' * * *

"When examining the concept of timeliness under Civ.R. 24, a court may consult the case law interpreting Fed.R.Civ.P. 24, upon which Ohio's rule is based. See Civ.R. 24 Staff Note. Under Fed.R.Civ.P. 24, 'the mere lapse of time by itself does not make an application untimely.' 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d (1986) 425–426, Section 1916. Similarly, '[a]lthough the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances.' *NAACP v. New York* (1973), 413 U.S. 345, 365–366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 662.

"In *Blackburn, supra,* this court stated:

" 'Several factors must be considered by a trial court in determining the timeliness of a motion to intervene:

" ' " * * * In general, the basis of the alleged right to intervene is balanced against trial convenience and potential prejudice to the rights of original parties. Intervention as of right [Civ.R. 24(A) ] may be granted at a time in the proceedings when permissive intervention [Civ.R. 24(B) ] would not. That is, in cases of permissive intervention, greater consideration may be given to undue delay or prejudice in adjudicating the rights of the original parties, whereas in

cases of intervention of right, the court may give the greater consideration to possible prejudice to the intervenor in protecting his interest if intervention is not granted. * * *"' *Id.*, 29 Ohio App.3d at 352–353, 29 OBR at 481, 505 N.E.2d at 1013 (quoting *Likover v. Cleveland* [1978], 60 Ohio App.2d 154, 158–159, 14 O.O.3d 125, 128, 396 N.E.2d 491, 494).

"Besides the factors of 'permissive' versus 'of right,' and of prejudice to the parties and the would-be intervenor, federal courts interpreting Fed.R.Civ.P. 24 have identified as a factor 'the length of time the petitioner knew or should have known of the pendency of the suit.' *Culbreath v. Dukakis* (C.A.1, 1980), 630 F.2d 15, 20, fn. 9. See, also, *Lelsz v. Kavanagh* (C.A.5, 1983), 710 F.2d 1040, 1043 (quoting *Stallworth v. Monsanto Co.* [C.A.7, 1977], 558 F.2d 257, 264–266). Similarly, federal courts have looked to 'the reason for the delay' as a factor. *Pennsylvania v. Rizzo* (C.A.3, 1976), 530 F.2d 501, 506, certiorari denied *sub nom. Fire Officers Union v. Pennsylvania* (1976), 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375. See, also, *Gould v. Alleco* (C.A.4, 1989), 883 F.2d 281, 286, certiorari denied (1990), 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953; *Alaniz v. Tillie Lewis Foods* (C.A.9, 1978), 572 F.2d 657, 659, certiorari denied *sub nom. Beaver v. Alaniz* (1978), 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134."

The case of *Norton v. Sanders* (1989), 62 Ohio App.3d 39, 574 N.E.2d 552, is somewhat similar to the one before us. The city of Norton adopted a new zoning ordinance, which repealed the old one. The new ordinance met with strenuous opposition, and the council placed an initiative before the voters. When the new ordinance failed at the polls, the city of Norton filed a declaratory judgment action seeking a determination on whether the old ordinance was revived by the failure of the new ordinance. The court held that the old ordinance had not been revived. When the city of Norton did not appeal the decision, twenty-five citizens filed a motion to intervene as of right, arguing that Norton was no longer representing their interests. The motion was initially granted, but at a hearing held later, the court reversed itself, vacated its previous order and denied intervention. The residents appealed.

The Ninth District Court of Appeals found the order allowing intervention should not have been vacated. In so finding, the court stated:

"Finally, the last condition that must be met is whether the application to intervene was timely filed. Whether an application to intervene under Civ.R. 24 is timely depends on the facts and circumstances of the particular case, and is to be determined by the trial court in its discretion. *NAACP v. New York* (1973), 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 663. The courts have indicated a strong reluctance to grant intervention after a trial judgment is entered, making such intervention unusual and not often granted. However, the courts are making an exception to the rule where the intervenors are protecting

their right to appeal from an adverse judgment. 'The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.' *United Airlines, Inc. v. McDonald* (1977), 432 U.S. 385, 395–396, 97 S.Ct. 2464, 2470–2471, 53 L.Ed.2d 423, 432–433. In determining whether to permit a post-judgment intervention, the courts have considered the following: the purpose for which intervention was sought; the necessity for intervention as a means of preserving the applicant's rights; and the probability of prejudice to those parties already in the case. Annotation, Timeliness of Application for Intervention As of Right Under Rule 24(a) of Federal Rules of Civil Procedure (1982), 57 A.L.R.Fed. 150, 205.

"In *Triax Co. v. TRW, Inc.* (C.A.6, 1984), 724 F.2d 1224, the court reversed a decision denying intervention to a person who moved to intervene only after the original plaintiff decided not to appeal. The court noted that the interests of Triax and the intervenor were in accord and the intervenor would not have been entitled to intervene during the lower court's proceedings. However, at the time Triax decided not to appeal, its representation of the intervenor's interest became ineffective. Further, the application was timely because the intervenor had no reason to seek intervention prior to Triax's decision not to appeal. The court also noted that the opposing party would not be prejudiced by the intervention for purpose of appeal since they could have reasonably expected Triax to appeal. *Id.* at 1228.

"In the instant case appellants' interests were being adequately represented by the city of Norton during the trial court's proceedings. When Norton decided not to appeal, the interests of the intervenors were no longer adequately represented. As in *Triax*, it cannot be said that the defendants in this case would be prejudiced by allowing appellants to intervene since the defendants should have expected Norton to appeal." *Id.* at 42–43, 574 N.E.2d at 554–555.

For the very same reasons advanced in *Norton*, the Ninth District denied intervention in *Kourounis v. Raleigh* (1993), 89 Ohio App.3d 315, 624 N.E.2d 276. That case involved three parties in a real estate matter. The Kourounises had a right of first refusal to purchase their leasehold from the landlord, Raleigh. Goodyear and Raleigh entered into an option contract whereby Goodyear had the right to purchase the property subject to the Kourounises' right of first refusal. When the Kourounises learned of the option contract they sued Raleigh, arguing that, by contract, they had the right to first refusal. Kourounis prevailed and, after the judgment was entered, Goodyear filed a motion to intervene. The motion was denied. Upon appeal, the court found the denial properly granted.

The court distinguished *Norton*, noting that in *Norton* the court exercised its discretion in favor of intervention and that the relationship between a city and its citizens was such that the residents could rely on the belief that the city would

protect their interests. Goodyear, as one of three parties sharing an interest in the same parcel, could not presume that one of those other parties, whose interest might be adverse, would adequately represent its interest.

Intervention of right is defined by Civ.R. 24(A):

"(A) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Here, as in *Norton,* the court exercised its discretion in favor of intervention. Here, the miners reasonably relied on the Division of Mines to uphold the three-day inspection rule, which affects their health and well-being. When it appeared that the division was not adequately representing their interests, the motion to intervene was filed within the time for appeal. Here, as in *Norton,* when Kidney changed his position, the union's interest was no longer protected and intervention was properly granted. And, much as in *Norton,* SOCC offers nothing to show that it was prejudiced by intervention.

SOCC's sixth assignment of error is not well taken and is overruled.

Seventh Assignment of Error

"The trial court erred in its consideration of and reliance upon affidavits in alleged support of the motion to intervene and motion for relief from consent judgment, submitted by the intervenors subsequent to the trial court's oral decision granting said motions."

In its seventh assignment of error, SOCC takes issue with the affidavits submitted by the union in support of its motion to intervene. Specifically, SOCC argues that since one of the affidavits was filed after the court granted the motion to intervene, the motion was improperly granted.

In its brief, SOCC states:

"The unions submitted two affidavits, that of Harold Erdos and that of Jerry Kovach. The affidavit of Mr. Erdos was previously filed with the trial court on or about June 15, 1993 in conjunction with the unions' motion to intervene. The affidavit of Mr. Kovach, however, had not been filed prior to the court's decision during the pretrial conference on November 5 to grant the motion to intervene and the motion for relief from consent judgment."

We presume that, absent an indication to the contrary, there was regularity in the proceedings below. *Palmer v. Kaiser Found. Health* (1991), 64

Ohio App.3d 140, 143, 580 N.E.2d 849, 851. The affidavit filed after the entry could have had no effect on its being granted, and once it had been granted would have no effect either. SOCC offers nothing to convince us that the court could not reach an informed opinion based solely on Mr. Erdos's affidavit. SOCC's seventh assignment of error is not well taken and is overruled.

Eighth Assignment of Error

"The trial court erred in failing to set forth, at the request of plaintiff-appellant, the bases for its decision vacating the consent judgment herein."

▮ When the trial court orally pronounced its decision, it directed counsel for the UMWA to prepare an entry. Counsel for SOCC moved the court to state for the record the grounds on which it was granting the motion. When the proposed entry was prepared by counsel and submitted, it did contain reasons for granting the relief requested, and the court signed it. SOCC claims, "[t]he Unions' counsel, rather than the trial court, ultimately set forth the grounds for granting the motion for relief from consent judgment and for granting the motion to intervene." Perhaps, but it is a common practice for the courts to call upon prevailing counsel to prepare an entry for the court's signature, and we presume no judge would put his hand to an entry which he felt was not proper or which did not adequately reflect the decision of the court.

SOCC's final assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

HARSHA, P.J., and PETER B. ABELE, J., concur in judgment only.

HARSHA, Presiding Judge, concurring.

Generally, a consent judgment may not be directly or collaterally attacked in the absence of allegations of irregularity or fraud in the procurement of the judgment. *Sponseller v. Sponseller* (1924), 110 Ohio St. 395, 399, 144 N.E. 48, 49; *Mack v. Mack* (Sept. 28, 1987), Richland App. No. CA–2479, unreported, 1987 WL 18620; *Schenk v. Mohre* (Oct. 28, 1983), Wood App. No. WD–83–33, unreported, 1983 WL 6982. However, public policy requires a limited exception to this judicially imposed general rule where the ultimate issue involves a governmental agency which is called upon to administer a statutory duty dealing with health and safety issues affecting a significant number of people. When a public agency enters into an agreement based upon the mistaken belief that the beneficiaries of the safety regulation are in agreement with the proposed settlement, it is not an

abuse of discretion to grant a timely Civ.R. 60(B) motion. Because these conditions exist here, I concur in judgment.

PETER B. ABELE, J., concurs in the foregoing opinion.