OPINION *Page 2 
{¶ 1} This case involves the installation of a public sanitary sewer system in Liberty and Violet Townships in Fairfield County, Ohio. In order to comply with Ohio EPA orders, appellee, the Board of County Commissioners for Fairfield County, Ohio, devised a plan to develop a sanitary sewer project for various subdivisions which would include those residents living along roads and streets connecting the subdivisions. Those residents include appellants herein, Gene and Katherine Beretich, Gary and Pamela Beretich, Larry Beretich, and Dean Beretich. The project was called the Liberty Township Sanitary Sewer System Improvement Project.
 {¶ 2} In order to effectuate the plan, appellee passed a Resolution of Necessity, 02-01.15f, on January 15, 2002. Thereafter, each appellant was subject to an appropriation case as easements across their respective properties were needed to install the sanitary sewer system.
 {¶ 3} On August 21, 2003, appellee passed Resolution 03-08.21e ordering residents who had not yet connected to the new sewer system to connect. The resolution set December 24, 2003 as the deadline to connect. Appellants refused to comply with the resolution.
 {¶ 4} On February 3, 2005, appellee filed a complaint for injunctive relief, seeking an order from the court requiring appellants and others to connect to the new sanitary sewer system.
 {¶ 5} On April 14, 2005, appellants, except for Dean Beretich who had agreed to an easement, and appellee entered into agreed entries in the appropriation cases, granting appellee permanent and temporary easements "free and clear of all claims." *Page 3 
 {¶ 6} A bench trial on the injunctive relief complaint commenced on January 31, 2007. By judgment entry filed April 13, 2007, the trial court granted the injunction and ordered appellants to connect to the sanitary sewer system.
 {¶ 7} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 8} "THE LOWER COURT ERRED, ABUSED ITS DISCRETION, AND FOUND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FAILED TO INVALIDATE THE APPELLEE'S JANUARY 15, 2002 RESOLUTION OF NECESSITY AS VIOLATIVE OF R.C. 121.22."
 II {¶ 9} "THE LOWER COURT ERRED, ABUSED ITS DISCRETION, AND FOUND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FAILED TO FIND APPELLEES' ASSESSMENT SCHEME TO BE CONTRARY TO R.C. 6117.30-31."
 III {¶ 10} "THE LOWER COURT ERRED AND ABUSED ITS DISCRETION BY INAPPROPRIATELY APPLYING THE DOCTRINE OF RES JUDICATA."
 IV {¶ 11} "THE LOWER COURT ERRED, ABUSED ITS DISCRETION, AND FOUND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FAILED TO FIND APPELLEES' ASSESSMENT SCHEME TO BE VIOLATIVE OF APPELLANTS' EQUAL PROTECTION RIGHTS." *Page 4 
 I {¶ 12} Appellants claim the trial court erred in finding the January 15, 2002 Resolution of Necessity did not violate R.C. 121.22. We disagree.
 {¶ 13} Pursuant to R.C. 6117.06, before constructing a sanitary sewer system, county commissioners must officially declare the project to be necessary for the public's health and welfare. In the case sub judice, appellee passed Resolution 02-01.15f on January 15, 2002.
 {¶ 14} Appellants argue appellee violated R.C. 121.22 by "misleading" the public audience present for the meeting via Commissioner Reid's welcoming remarks therefore, the Resolution of Necessity is invalid pursuant to R.C. 121.22(H). Because the Resolution of Necessity is invalid, appellee violated R.C. 6117.06. Appellee argues appellants waived any claim of a violation of R.C. 6117.06 by not raising the issue to the trial court.
 {¶ 15} Upon review, we find there has been no waiver of the issue. The arguments regarding R.C. 121.22 violations were specifically raised and subsequently addressed by the trial court in its April 13, 2007 judgment entry as follows:
 {¶ 16} "The Court further finds the Defendants have failed to prove the Commissioners violated Ohio's Sunshine Law, R.C. 122.21 (sic). The evidence demonstrated the Commissioners gave proper notice of each of their meetings and actions, and satisfied their responsibilities pursuant to Ohio's Sunshine Law, culminating in Resolution 03-08.21.e ordering the Defendants, among others, to connect to the public sewer." *Page 5 
 {¶ 17} The inclusion of Resolution 03-08-21 e in the trial court's judgment entry establishes that the challenge to R.C. 121.22 was predicated upon the argument that any resolution pursuant to R.C. 6117.06 was void.
 {¶ 18} The challenge to appellee's actions during the January 15, 2002 meeting centers around Commissioner Reid's statements:
 {¶ 19} "Commissioner Reid welcomed those in attendance and stated that, for those attending regarding the Liberty Township sanitary sewer system project, the Commissioners would only be considering a resolution today to establish the public hearing date. He suggested that the visitors might wish to hold their comments until the public hearing on February 12 when a court stenographer would be present and comments could be entered into the assessment record." See, Regular Meeting #02-02, Defendant's Exhibit B.
 {¶ 20} Thereafter, the following resolution was passed:
 {¶ 21} "APPROVAL OF DECLARATION OF NECESSITY TO CONSTRUCT SANITARYSEWER SYSTEM FOR LIBERTY TOWNSHIP SANITARY SEWER SYSTEM IMPROVEMENTPROJECT AREA AND ESTABLISHMENT OF PUBLIC HEARING DATE
 {¶ 22} "On motion of Judith Shupe and second of Jon Myers, the Board of Commissioners voted to approve a declaration of necessity to construct a sanitary sewer system for the Liberty Township Sanitary Sewer System Improvement Project Area and to establish the date of Tuesday, February 12, 2002, at 6:00 p.m. for public hearing on the project and proposed assessments (See Resolution 02-01.15.f attached)" *Page 6 
 {¶ 23} Appellants argue Commissioner Reid's statement was essentially an action to "close the meeting" for purposes of the emergency resolution. Appellants argue this action violated the provisions of R.C. 121.22.
 {¶ 24} It is not disputed that appellee complied with all the other provisions of R.C. 121.22 i.e., public notice of subject, time, and place of the meeting. Appellants argue Commissioner Reid's statements were misleading and prevented the public from knowing what business would be conducted in violation of R.C. 121.11(H) which states the following:
 {¶ 25} "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section. A resolution, rule, or formal action adopted in an open meeting is invalid if the public body that adopted the resolution, rule, or formal action violated division (F) of this section."
 {¶ 26} Although the tone of Commissioner Reid's statement could have had a chilling effect on any "public speaking" during the meeting, it did not create a constructive closure of the meeting. As we implied inManogg v. Stickle (April 8, 1998), Licking App. No. 97CA104, at 2, a constructive closure of a meeting must demonstrate that the governmental public body "intentionally prevented the audience from hearing or knowing what business was being conducted at the meeting." Such is not the case sub judice. Part of what Commissioner Reid said was true: a public hearing would be *Page 7 
scheduled at the meeting. What he did not say was whether a resolution of necessity would or would not be presented.
 {¶ 27} Although the welcoming remarks were wrong and misleading, it did not create a closure of the meeting. There is no evidence that there was a joint decision of the governmental public body to mislead, nor is there any evidence that it was intentional.
 {¶ 28} Upon review, we find the trial court did not err in finding no violations of R.C. 121.22.
 {¶ 29} Assignment of Error I is denied.
 II {¶ 30} Appellants claim the trial court erred in finding that appellee had satisfied the requirements of R.C. 6117.51, and did not violate R.C. 6117.30-31 in not assessing the residents of the Huntington Hills subdivision as it did appellants. We disagree.
 {¶ 31} We note appellants do not claim that any of the trial court's specific eighty-seven findings of fact are in error. Instead, appellants argue appellee failed to assess all property owners equally within the Liberty Township Sanitary Sewer System Improvement Project. Specifically, appellants argue R.C. 6117.30 requires all of the parties within a sewer project to be assessed equally:
 {¶ 32} "The cost of the acquisition or construction of sanitary or drainage facilities to be paid by assessments shall be assessed, as an assessment district assessment, upon all the property within the county sewer district found to be benefited in accordance with the special benefits conferred, less any part of the cost that is paid by *Page 8 
the county at large from other available funds. State land so benefited shall bear its portion of the assessed cost."
 {¶ 33} R.C. 6117.31 provides the following in pertinent part:
 {¶ 34} "Upon the completion of any improvement under sections 6117.01
to 6117.45, inclusive, of the Revised Code, the actual cost thereof shall be ascertained and to such actual cost shall be added an amount equal to the interest accrued and to accrue before the first installment of such assessment is collected upon certificates of indebtedness and upon bonds authorized by such sections or upon the contribution of the county to be paid from the assessment under an agreement pursuant to section 6121.13 of the Revised Code, between the county and the Ohio water development authority, for the construction of an improvement for which the county can levy assessments as provided in Chapter 6117. of the Revised Code, and the sum so arising, less the portion thereof to be paid by the county at large, shall be assessed against the lots and parcels of land within the assessment district found to be benefited by such improvement."
 {¶ 35} In its April 13, 2007 judgment entry, the trial court specifically found the general plan was as follows:
 {¶ 36} "19. Largely as a result of public input and revised concepts, the general plan was revised on May 18, 2000 (the `final general plan'). The final general plan contained the three separate components described above, i.e.: (1) construction of the new Sycamore Creek WRF, (2) installation of a gravity interceptor line running from Refugee Road to the Sycamore Creek WRF, and (3) construction of the Liberty pressure collection system providing public sewer access to the residents of the *Page 9 
Covered Bridge Estates, Poplar Heights, and Homestead Acres subdivisions, and numerous properties along Refugee Road (the `Liberty Pressure Collection System Users').
 {¶ 37} "20. The Liberty Sewer Improvements project was designed so that the Liberty pressure collection system would collect wastewater from the new customers in Liberty Township, which then would be conveyed through the gravity interceptor line to the Sycamore Creek WRF for treatment."
 {¶ 38} Three different categories of costs associated with the Liberty Township Sanitary Sewer System Improvement Project were assessed on the public sewer customers:
 {¶ 39} "25. The first cost is an assessment that was imposed only on the residents of Liberty Township who lived within the `assessment boundary' or `assessment district.' Such residents owned property located within 200 feet of the new Liberty pressure collection system. These assessments were used exclusively to pay for the Liberty pressure collection system, which served only properties that had never before been connected to the public sewer.
 {¶ 40} "27. Each of the Defendants lives within the `assessment boundary.'
 {¶ 41} "28. No portion of the assessments were used for any other component of the Liberty Sewer Improvements project.
 {¶ 42} "29. The second cost to new County customers is known as a `connection fee' or `tap fee.'
 {¶ 43} "30. Tap fees are fees collected by the County when a property first taps into the public sewer, and are generally used to retire debt. *Page 10 
 {¶ 44} "31. Property owners are only charged a tap fee once — at the time they first become public sewer customers of the County. The County does not and has not ever charged a tap fee more than once because tap fees are geared solely to new customers of the County.
 {¶ 45} "32. The third charge to sewer customers is a monthly (or quarterly) fee for use of the system, called a `user fee.' User fees are applied to the operation, maintenance, and replacement costs of the entire County wastewater system. All users of the system pay a user fee on an ongoing basis."
 {¶ 46} Appellants object to the second category of fees because they were charged when other property owners (Huntington Hills subdivision residents) were not. Appellants argue the "special benefit" of the sewer project enured to all property owners regardless of their prior private sewer system or appellants' specific access to the new sewer project. Essentially, it is appellants' position that within one single sewer project, there cannot be distinct or different classes of users who are assessed separately. We disagree with this argument. Pursuant to R.C. 6117.30, the phrase "all the property within the county sewer district found to be benefited" implies that different classes of property may exist within the sewer district and therefore different benefits may result.
 {¶ 47} As noted by the trial court in its April 13, 2007 judgment entry, the Huntington Hills subdivision already had sewer lines and a wastewater treatment plant. The costs of said improvements were assessed by the developer through the cost of each lot:
 {¶ 48} "38. The developer of Huntington Hills built sewer lines and a wastewater treatment plant (along with the other infrastructure needed) to serve the Huntington Hills *Page 11 
development. The costs of the sewer line, infrastructure — roads, water supply, streetlights, etc. — and wastewater treatment plant (and other infrastructure) were included in the price of the Huntington Hills lots."
 {¶ 49} In 1974, the Huntington Hills treatment plant and sewers were transferred to Fairfield County with no costs to the county. As such, the Huntington Hills treatment plant and sewer lines are county property. The Liberty Township Sanitary Sewer System Improvement Project does not affect Huntington Hills:
 {¶ 50} "40. On December 12, 1974, the Huntington Hills wastewater treatment plant and sewers were transferred to Fairfield County at little or no cost to the County.
 {¶ 51} "41. The Huntington Hills sewer system and wastewater treatment plant have always been operated as a public sewer system.
 {¶ 52} "42. The Huntington Hills subdivision is not served by the Liberty pressure collection system." See, April 13, 2007 Judgment Entry.
 {¶ 53} As a result, Huntington Hills property owners were not assessed by the county. Essentially, the county paid from county funds for the collection of "county property" to the county gravity line.
 {¶ 54} Appellants' "specific benefit" is that they now have county sewer where none previously existed. Huntington Hills, via the 1974 transfer, obtained no benefit because they were already on a county sewer system albeit the system was different. The difference was caused by the county.
 {¶ 55} Upon review, we conclude the trial court did not err in finding no violation of R.C. 6117.30-31.
 {¶ 56} Assignment of Error II is denied. *Page 12 
 III {¶ 57} Appellants claim the trial court erred in determining the agreed entries in the appropriation cases barred relitigation of appellants' claims under the doctrine of res judicata (Fairfield Case Nos. 02CV693, 02CV694, 02CV695, and 02CV696). We disagree.
 {¶ 58} Res judicata is defined as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp., 73 Ohio St.3d 379,1995-Ohio-331, syllabus.
 {¶ 59} The agreed entries (Plaintiff's Exhibits 65, 66, and 67) mandated the following:
 {¶ 60} "IT IS THEREFORE ORDERED. ADJUDGED, AND DECREED that Plaintiff, Board of Commissioners of Fairfield County, Ohio be granted a permanent easement and temporary construction easement in the real property * * * free and clear of all claims of Defendants * * *."
 {¶ 61} In its April 13, 2007 judgment entry, the trial court found the equal protection argument was claimed in the appropriation case:
 {¶ 62} "The Court concludes the Defendants' Equal Protection claims are barred by the doctrine of res judicata. Defendants Gary and Pamela Beretich, Gene and Katherine Beretich, and Larry M. Beretich a.k.a. Lary M. Beretich and Michelle Beretich each asserted the same defenses in the Easement Litigation and subsequently entered into Agreed Entries terminating those lawsuits and granting the requested easements `free and clear of all claims.' Agreed entries are equivalent to final judgments for res judicata *Page 13 
purposes. See, e.g., Southern Ohio Coal Co. v. Kidney
(4th Dist. 1995), 100 Ohio App.3d 661, 668. Because the Equal Protection defenses asserted here were raised and litigated in the Easement Litigation, these Defendants are barred from re-litigating those defenses here.
 {¶ 63} "The Court concludes the default judgment entered against Defendant Sollie in the Easement Litigation additionally bars any Equal Protection defense by Defendant Sollie here as res judicata. SeeStand Energy Corp. v. Ruyan (1st Dist. 2005),2005-Ohio-4846, ¶ 11 (concluding `[a] default judgment is a valid and final judgment upon the merits, and it can be, therefore, a proper bar to later claims for purposes of claim preclusion.') The Court further concludes that the dismissal of the Easement Litigation against Defendant Dean Beretich bars his Equal Protection defenses here because he could have raised those defenses in the Easement Litigation but chose not to do so. See, e.g., Nat'l Amusements Inc. v. City ofSpringdale (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (noting `[i]t has long been the law of Ohio and that an existing final judgment or decree between parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.' (internal quotations omitted))."
 {¶ 64} It is appellants' position that the "free and clear" language is but an acknowledgement of the language required in Ohio's Marketable Title Act. Therefore, the use of the terminology "free and clear" is not a waiver of other existing claims.
 {¶ 65} The record sub judice contains appellants' amended answer and counterclaim in the appropriation cases and the resulting agreed entries, attached as Exhibits A and B to appellee's January 23, 2007 motion in limine to exclude any *Page 14 
evidence on estoppel and equal protection defenses. In their answer and counterclaim, appellants pled the specific issue of equal protection:
 {¶ 66} "[Answer] 6. Defendant's further state that Plaintiff's actions in attempting to mandate that Defendant's pay certain fees and assessments in attaching to Plaintiff's newly constructed sanitary sewage line denies is unconstitutional in that it denies Defendants of their rights of equal protection as other citizens similarly situated will not be required to pay the same assessment and tap in fees which Plaintiff proposes to assess against Defendants.
 {¶ 67} "[Counterclaim] 3. Defendants' assert this action is unconstitutional for the following reasons:
 {¶ 68} "(A) Plaintiff's actions in attempting to require Defendants to be assessed for tapping into the new line denies Defendants equal protection of the law as Plaintiff will not be requiring all citizens tapping into the line to be assessed at the rate Defendants will be assessed."
 {¶ 69} Although the agreed entries in the appropriation cases did not specifically address the issues of equal protection and constitutionality raised in appellants' answer and counterclaim, it did settle the cases. The agreed entries granted appellee permanent and temporary easements "free and clear of all claims."
 {¶ 70} Upon review, we find by failing to preserve the equal protection claims in the 2002 actions, appellants are now barred under the doctrine of res judicata.
 {¶ 71} Assignment of Error III is denied. *Page 15 
 IV {¶ 72} Appellants claim the trial court erred in determining the assessment scheme was not arbitrary and capricious and did not violate appellants' equal protection rights.
 {¶ 73} Although the trial court found the equal protection claim was barred under the doctrine of res judicata and we agree, the trial court nevertheless found appellants failed to prove their equal protection claim:
 {¶ 74} "This claim is based on the County's alleged disparate treatment of Defendants versus the residents of Huntington Hills. However, the fact is that Defendants are not similarly situated to the Huntington Hills residents. The Huntington Hills residents previously paid for the County owned and operated public sewer system and wastewater treatment plant that serves them. The Defendants have never paid any amount toward a public sewer system or wastewater treatment facility.
 {¶ 75} "The Huntington Hill residents have been connected to the County sewer system for over thirty years and paying user fees to the County the entire time; the Defendants have not paid a dime. The Commissioners' decision to impose tap fees only on the Defendants (and all other new users) and not on Huntington Hills residents has a rational basis.
 {¶ 76} "The Court further finds Defendants have failed to prove there was any violation of their Equal Protection rights relating to Huntington Hills residents and the imposition of an assessment on Defendants. The assessments were dedicated exclusively to pay for the Liberty pressure collection system, which serves only the *Page 16 
assessed residents. The Liberty pressure collection system does not serve Huntington Hills.
 {¶ 77} "The Court finds Defendants have failed to demonstrate the absence of a rational basis for the Commissioners' decision to assess the Liberty collection pressure system users, such as Defendants, for construction of the Liberty pressure collection system that serves only them."
 {¶ 78} Because of our decision in Assignment of Error III, we find this Assignment of Error to be moot.
 {¶ 79} Assignment of Error IV is moot.
 {¶ 80} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
 Wise, J. and Edwards, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed. *Page 1