OHIO STATE MEDICAL BOARD, APPELLEE, *v.* ZWICK, APPELLANT.

(No. 753—Decided February 8, 1978.)

*Mr. William J. Brown,* attorney general, and *Mr. Thomas W. Hess,* for appellee.

*Mr. H. C. Dutro, Jr., Mr. Bernard J. Rosen* and *Mr. Donald S. Varian, Jr.,* for appellant.

MAHONEY, P. J. The defendant-appellant, Louis S. Zwick, M. D. (hereafter Zwick), appeals the judgment of the Medina County Common Pleas Court affirming the order of the plaintiff-appellee, the Ohio State Medical Board (hereafter Board) which indefinitely suspended appel-

lant's license to practice medicine and surgery in Ohio. We affirm.

## Facts

Zwick was notified by the board on December 8, 1976, that it intended to determine whether disciplinary action would be taken against him for violations of R. C. 4731.22. The board listed six charges against Zwick: (1) dispensing 3,403,503 dosage units of anorectic controlled substance (mostly amphetamine compounds) to bariatric patients (bariatric medicine deals with the treatment of obesity) on or about October 1, 1972, through July 27, 1975; (2) dispensing 160,000 dosage units of anorectic controlled substance to bariatric patients on or about July 28, 1975, through October 31, 1975; (3) dispensing anorectic controlled substances to bariatric patients in misbranded packets of 30 dosage units during the period of October 1, 1972, through July 27, 1975; (4) dispensing anorectic controlled substances to bariatric patients in misbranded packets of 30 dosage units during the period of July 28, 1975, through October 1975 (the misbranding consisted of a failure to label each packet); (5) diagnosing, treating, prescribing, and dispensing drugs to John Baer while Baer used various aliases during the period of July 3, 1974, through July 14, 1975; (6) diagnosing, treating, prescribing, and dispensing drugs to John Baer while Baer used various aliases during the period of July 30, 1975, through March 8, 1976.

Charges (1), (3) and (5) allegedly violated R. C. 4731.22(F) (prior to July 28, 1975) and certain sections of the American Medical Association (A. M. A.) code of ethics. Charges (2), (4) and (6) allegedly violated R. C. 4731.22(B)(2), (6), (15) (effective July 28, 1975) and certain sections of the A. M. A. code of ethics. Zwick was advised of his right to a hearing upon a timely request and of certain procedural rights he would enjoy during the hearing.

Zwick requested a hearing. The hearing commenced April 28, 1977, before hearing officer Dr. Peter Lancione, a member of the medical board designated to conduct hear

ings pursuant to R. C. 4731.23. The evidence adduced at the hearing will be discussed at length *infra*. Lancione found that Zwick was guilty of all six charges. Lancione concluded that charges (1), (3) and (5) violated R. C. 4731.22(F) as alleged. He further concluded that charges (2), (4) and (6) violated R. C. 4731.22(B)(2),(6) as alleged, but not R. C. 4731.22(B)(15). Charges (1), (3) and (5) were held to violate the A. M. A. code of ethics. Lancione ordered that Zwick's license to practice medicine and surgery in Ohio be suspended for ninety days and that thereafter Zwick be placed on probation for one year. Lancione's report was issued on July 13 and transmitted to the full board the same day. No notice was sent to Zwick. The board amended Lancione's order to an indefinite suspension and approved and confirmed the findings and amended order with an effective date of August 16. All of the above activities by the board took place on July 13. Zwick was notified of the board's action on July 22 and advised of his right to appeal pursuant to R. C. 119.12.

Zwick perfected his appeal to the Common Pleas Court. The court heard arguments, received briefs, and issued an order finding the board's order to be supported by reliable, probative and substantial evidence and in accordance with law. A motion to suspend the board's order was denied.

## Assignment of Error One

"The hearing conducted before the Ohio State medical board did not comply with the standards of due process and fair play established by the United States Constitution."

Zwick's constitutional rights to notice and an opportunity to be heard are not violated through the use of the procedure allowed by R. C. 4731.23, which is discussed in greater detail *infra*. Except as noted *infra*, Zwick was accorded a proper hearing before Lancione. The use of a single hearing officer is well recognized in administrative law. See, *e. g.*, 73 Corpus Juris Secundum 460, Public Administrative Bodies and Procedure, Section 135. The cases cited by Zwick do not hold to the contrary. As discussed under assignment of error four, Zwick was unlawfully

denied the right to cross-examine one of the witnesses against him. The effect of this denial is discussed under assignments of error two and six.

### Assignment of Error Three

"The hearing before the Ohio State medical board on 7/13/77 to approve the findings of the hearing officer failed to comply with the Ohio administrative procedure act and failed to comply with the standard of due process."

The medical board is subject to the administrative procedure act, R. C. Chapter 119, by virtue of its licensing function pursuant to R. C. 4731.08 *et seq.* The board's determination to suspend Zwick's license is an adjudication (as defined in R. C. 119.01[D]), and is, consequently, subject to R. C. 119.09 pursuant to R. C. 119.06.

Zwick contends the board's procedures violate R. C. 119.09. That statute provides in part:

"In any adjudication hearing required by sections 119.01 to 119.13, inclusive, of the Revised Code, the agency may appoint a referee or examiner to conduct said hearing. He shall have the same powers and authority in conducting said hearing as granted to the agency. Such referee or examiner shall have been admitted to the practice of law in the state and be possessed of such additional qualifications as the agency requires. The referee or examiner shall submit to the agency a written report setting forth his findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. A copy of such written report and recommendation of the referee or examiner shall within five days of the date of filing thereof, be served upon the party or his attorney or other representative of record, by registered mail. The party may, within ten days of receipt of such copy of such written report and recommendation, file with the agency written objections to the report and recommendation, which objections shall be considered by the agency before approving, modifying, or disapproving the recommendation. The agency may grant extensions of time to the party within which to file such objections. No recommendation of the referee or examiner shall be approved, modified, or disapproved by the

agency until after ten days after service of such report and recommendation as provided in this section. The agency may order additional testimony to be taken or permit the introduction of further documentary evidence. The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval.''

Zwick equates Lancione with the ''referee or examiner'' mentioned above. Since Zwick was not notified of Lancione's report within five days of its filing with the board, he argues the suspension is invalid pursuant to R. C. 119.07, since he had no opportunity to file written objections prior to final board action.

The board contends it need not follow R. C. 119.09 when it utilizes the procedure contained in R. C. 4731.23:

''Any investigation, inquiry, or hearing, which the state medical board is empowered to hold or undertake may be held or undertaken by or before any member of the board, and the finding or order of such member shall be deemed to be the order of said board when approved and confirmed by it.''

The board argues that this statute is more specific than R. C. 119.09, and should, consequently, control. Zwick denies this assertion, and responds that if R. C. 4731.23 overrides R. C. 119.09, the board is without power to modify Lancione's suspension of him.

We reject Zwick's argument. The ''referee or examiner'' mentioned in R. C. 119.09 must be admitted to practice law in Ohio. The record does not disclose that Lan-

cione is so licensed. Even if he were, however, Zwick's argument would be without merit. When the medical board designates one of its members to conduct an adjudication hearing pursuant to R. C. 4731.23, the affected party, while enjoying the procedural safeguards contained in R. C. 119.06-.10 during the hearing, does not have the right to notice of, and opportunity to file written objections to, the findings or order of the member pursuant to R. C. 119.09. His avenue of appeal is pursuant to R. C. 119.12, after the approval and confirmation by the board. If the medical board chooses to appoint a qualified attorney to conduct the hearing, who is not one of its members, that attorney would be a "referee or examiner" under R .C. 119.09. We also reject Zwick's contention that R. C. 4731.23 prohibits the board from modifying Lancione's order. If the final order is based upon the record utilized by the member conducting the hearing, a modification of the original order is proper.

### Assignment of Error Four

"The hearing before the Ohio State medical board, through its hearing officer Dr. Lancione, conducted on 4/28/77 failed to comply with the due process clause in denying appellant the right of cross-examination of witnesses."

Zwick contends that Lancione erred in accepting the testimony of John Baer after improperly allowing Baer to refuse to answer questions on cross-examination on the basis of his privilege against self-incrimination. We agree that it was error to accept Baer's claim of privilege and to refuse to strike Baer's testimony from the record. Two of the charges against Zwick were that he dispensed anorectic controlled substances to Baer while Baer was using assumed names. Baer appeared for the board at the hearing.

We hold that, by testifying on direct examination, Baer waived his privilege against self-incrimination. Baer admitted visiting Zwick under assumed names on direct examination; consequently, he could not later refuse to testify to the details of those visits. See *Brown* v. *United States* (1958), 356 U. S. 148; see generally,

annotation, *Testifying in civil proceeding as waiver of privilege against self-incrimination,* 72 A. L. R. 2d 830. Further, Baer testified in a deposition, given in connection with a suit he brought against Zwick, that he had visited Zwick using false identifications. This deposition was received into evidence by Lancione. We hold that the testimony in this deposition constitutes an additional waiver by Baer of his privilege against self-incrimination.

### Assignment of Error Five

"The hearing before the Ohio State medical board, through its hearing officer Dr. Lancione, conducted on 4/28/77 improperly considered as evidence a consent decree issued from a prior hearing."

On January 29, 1976, the United States Attorney filed a complaint for declaratory judgment and for a preliminary and permanent injunction against Zwick in the United States District Court for the Northern District of Ohio. The United States alleged in the complaint that Dr. Zwick's distribution of controlled substances was in violation of federal and state statutes. On April 27, a consent decree for declaratory judgment and order of permanent injunction was entered by the federal district court in the above case.

We are satisfied that both the complaint and consent decree were received into evidence by Lancione. Zwick contends that the consent decree could not be used by Lancione in reaching his determination.

A consent decree is essentially a contract between the parties; however, it also is similar to a judgment, and is enforced as one. 49 Corpus Juris Secundum 308, 314. Judgments, Sections 173, 178. A consent decree is valid even though the court fails to deliberate and pass upon the matters in controversy, 47 America Jurisprudence 2d 144, Judgments, Section 1089, and even if all charges are withdrawn by either party, 32A Ohio Jurisprudence 2d 347, Judgments, Section 836. The effect of a consent decree is noted in 32A Ohio Jurisprudence 2d 350, Judgments, Section 840:

"* * * The law has been broadly laid down that as be-

tween parties *sui juris*, and in the absence of fraud, a judgment or decree of a court having jurisdiction of the subject matter, rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred, is binding and conclusive between the parties and their privies and may be used as a basis for the application of the doctrine of res judicata. Such a judgment is considered as binding and conclusive as one rendered in an adversary suit, in which the conclusions embodied in the decree had been based upon controverted facts and due consideration thereof by the court." * * *

Application of the traditional rule would lead to the conclusion that facts stated in the consent decree are not conclusive against Zwick in the hearing. See 32 Ohio Jurisprudence 2d 387, Judgments, Section 183; 47 American Jurisprudence 2d 150, Judgments, Section 1094; but see annotation, *Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment*, 31 A. L. R. 3d 1044. The record does not indicate, however, that Lancione used the consent decree as conclusive evidence against Zwick.

The consent decree was properly admitted as evidence of the facts contained herein.

*Assignments of Error Two and Six*

"The hearing before the Ohio State medical board, through its hearing officer, Dr. Lancione, conducted on 4/28/77 did not comply with the standard of evidence required by an administrative hearing, reliable, probative, and substantial.

"The findings of the Ohio State medical board, through its hearing officer Dr. Lancione, conducted on 4/28/77 are not supported by the record."

Before turning to an analysis of the evidence adduced in the hearing and its relationship to the charges against Zwick, we note some general rules in this area.

R. C. 119.12 provides in part:

"The court may affirm the order of the agency complained of in the appeal if it finds upon consideration of the entire record and such additional evidence as the court

has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative and substantial evidence and is in accordance with law. * * *''

Although the board need not strictly follow technical rules applicable in a judicial hearing, *State, ex rel. Mayers, v. Gray* (1926), 114 Ohio St. 270, substantial compliance with those rules will better facilitate a proper hearing. *Bucyrus* v. *State Dept. of Health* (1929), 120 Ohio St. 426, 430.

The first charge against Zwick is dispensing 3,403,500 dosage units of anorectic controlled substances from October 1, 1972, through July 27, 1975, with a breakdown as to name and number of drugs dispensed per year. This charge is supported by exhibit "B," first used in the federal suit against Zwick, and received by Lancione as part of the board's exhibit No. 3. Exhibit "B" is part of certified records from the files of the federal drug enforcement administration's Cleveland office. The exhibit shows, with a breakdown as to name and number of drugs per year, Zwick's purchases from October, 1972 through October 1975. The total number of dosages in the first charge is less than that in exhibit "B" since 110,000 dosage units of dextro-amphetamine sulfate 15 mg. and 50,000 dosage units of the same drug in 10 mg. strength purchased by Zwick in 1975 are not counted in the first charge, but form the basis of the second charge. Contrary to Zwick's assertions, this breakdown does not come from allegations in the federal complaint, but from an exhibit attached thereto. The first charge is also supported by the consent decree, wherein Zwick assented to the finding that he obtained 3,886,634 dosage units of anorectic controlled substances from October 1972 to October 1975, for the purpose of dispensing them to his bariatric patients. The number of drugs in the consent decree is drawn from exhibit "A," part of the D. E. A. records noted *supra*, and received at the hearing as part of the board's exhibit No. 3. There is

a difference between the figures used in exhibit "A" and "B," since only schedule II drugs are listed in exhibit "B" (exhibit "A" lists schedules I, II, and IV drugs), and more schedule II drugs are listed in exhibit "A" in 1975 than in exhibit "B."

Zwick claimed at the hearing that the figure in the consent decree was too large by approximately one million dosage units, since some drugs had been stolen and others returned by him. As noted *supra*, Lancione mentioned this claim in his findings. The findings indicate that, even accepting this claim, Lancione was convinced of Zwick's violation of R. C. 4731.22(F) (prior to July 28, 1975).

Hypothetical questions based upon the first charge were propounded to two medical experts, Drs. Sattin and Bianchine. Sattin replied that such a practice would not constitute proper professional conduct. Bianchine stated such a practice would be grossly unprofessional conduct. Zwick contends the hypothetical questions were improper as not being based upon facts in evidence at the hearing. We disagree. The facts were derived from the charge, which in turn is supported by the consent decree and exhibits "A" and "B." The hypothetical questions were based upon facts which the evidence could warrant Lancione in finding to exist. See 21 Ohio Jurisprudence 2d 438, Evidence, Section 429.

Bianchine testified by deposition. Zwick argues that the record does not show the admission of the deposition into evidence. We are, however, satisfied that Lancione considered the deposition, in his deliberation. Immediately prior to adjourning the hearing, Lancione indicated he would not reach a decision until he had "gone through" the deposition. Further, there is sufficient evidence in the record, apart from the deposition, to support Lancione's findings. We sustain the first charge.

The second charge is that Zwick dispensed 160,000 dosage units of anorectic controlled substances from July 28, 1975, to October 31, 1975. This charge is supported by the D .E. A. record, exhibit "B." In response to a hypothe-

tical question based upon this charge, Sattin stated that such a practice exhibits a failure to exercise reasonable, proper and appropriate medical care. Bianchine said that, based upon the average general practice, the practice would be inappropriate. Lancione concluded that this practice violates R. C. 4731.22(B)(2), (6) (effective July 28, 1975). We sustain the second charge and add that our comments *supra,* concerning the propriety of the hypothetical questions, and the use of the deposition, apply here.

Charges three and four are that Zwick dispensed anorectic controlled substances in misbranded packets from October 1, 1972, through October 1975. These charges are supported by the consent decree. Zwick introduced three exhibits, A, B, and J, and testimony, to refute these charges. Witness Moore did not work for Zwick during most of the relevant time period. Zwick denied ever dispensing anorectics in misbranded packets. There is sufficient evidence to support the charge. Lancione concluded that charge three violates R. C. 4731.22(F) (effective prior to July 28, 1975), and that charge four violates R. C. 4731.-22(B)(2), (6) (effective July 28, 1975). We sustain the third and fourth charges.

Charges five and six allege that Zwick diagnosed, treated, and prescribed and dispensed drugs to John Baer while Baer used various aliases from July 3, 1974, to March 8, 1976. The charges include a breakdown by date and name within that period. There is no support in the record for this breakdown. Further, we have previously held that Baer's testimony should have been stricken from the record. Although there are scattered references to Baer and his "habit" in the record, apart from Baer's own testimony, the evidence is insufficient to support Lancione's findings. It is a basic rule that an adminstrative agency may rely upon its own expertise when adjudicating an issue. This is limited by the requirements of reliable, probative, and substantial evidence, however. Charges five and six do not meet this requirement.

However, after considering the record, apart from Baer's testimony, we would still affirm the order of the

board indefinitely suspending Zwick's license to practice medicine and surgery in Ohio. Charges one through four are substantially supported by the record. Those charges amply justify the penalty imposed.

*Summary*

We overrule assignments of error one, two, three, five and six. We sustain the fourth assignment of error. However, we hold that the board's decision as to charges one through four is substantiated by the record but, without Baer's testimony, is not supported as to charges five and six. The sufficiency of the first four charges justifies and supports the board's action. We affirm the judgment affirming the board's order indefinitely suspending Zwick's license to practice medicine and surgery in Ohio.

*Judgment affirmed.*

VICTOR and BELL, JJ., concur.