The STATE, ex rel. CELEBREZZE, Appellee,

v.

FERRARO et al., Appellants.

[Cite as *State, ex rel. Celebrezze, v. Ferraro* (1989), 63 Ohio App.3d 168.]

Court of Appeals of Ohio,
Montgomery County.

No. 11248.

Decided June 6, 1989.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Michael J. Harmon,* Senior Assistant Attorney General, and *Mary Patrick Latham,* Assistant Attorney General, for appellee.

*Gump & Elliott Co., L.P.A.,* and *Jeffrey D. Slyman,* for appellants.

BROGAN, Judge.

Appellants, Michael J. Ferraro and Allied Pest Control, Inc. (hereinafter both referred to as "Allied Pest"), appeal from a declaratory judgment issued against them by the trial court.

Prior to the entry of the declaratory judgment, a consent judgment was executed between the state of Ohio and Allied Pest. Therein, the following conclusions of law were set forth:

"2. O.R.C. § 1345.01 *et seq.* and Ohio Administrative Code § 109:4–3–01 *et seq.,* and O.R.C. § 1345.21 *et seq.* govern the business practices of the Defendants.

"* * * *

"4. Defendants, Michael J. Ferraro, as president of Allied Pest and as a custom licensed applicator, and Allied Pest, in the course of doing business in Ohio, were engaged, at all times relevant to this consent judgment, in the solicitation, consummation, and effectuation of 'consumer transactions', directly or indirectly, within the meaning of O.R.C. § 1345.01(A)."

The complaint filed against Allied Pest alleged, *inter alia,* that Allied Pest had violated several sections of the Ohio Consumer Sales Practices Act and substantive rules, to wit: R.C. 1345.02(A) and (B)(10) (deceptive consumer sales practices involving false representations regarding warranty, disclaimer of warranty, or other rights, remedies or obligations); R.C. 1345.03(A) and (B)(5) (unconscionable consumer sales practices wherein supplier knew consumer transaction to be substantially one-sided in favor of the supplier); and Ohio Adm.Code 109:4–3–05(A)(1), the "repairs or services rule" (unfair and deceptive practice involving consumer transaction over $25 wherein supplier failed to provide an estimate form and anticipated date of completion of service).

Following the entry of the consent judgment, two issues were specifically reserved for consideration by the trial court:

"(1) the applicability of the 'Repairs and Services' rule, Ohio Administrative Code 109:4–3–05, to consumer transactions involving the solicitation and sale of pest control inspection services and pest control treatment services; and

"(2) whether or not a supplier who gives a warranty in connection with pest control treatment services which limits the warrantor's liability under the warranty to 'retreatment only' offers an illusory warranty and thereby commits an unfair, deceptive, and/or unconscionable act or practice in violation of Ohio Revised Code 1345.02(A) and/or 1345.03(A)." (Consent judgment, at 10–11.)

To its memorandum on these two issues, the state attached as Exhibit 1 a document entitled, "Control Contract and Guarantee," which was executed between Allied Pest and Julia Gibson, one of numerous customers upon whose behalf this action was brought. The bottom portion of the contract is labelled, "Control Guarantee" and states: "The purchaser further understands that Allied's liability under this agreement is limited to retreatment only and in no way, implied or otherwise, is responsible for damages or repairs to the structure or contents, or any other liabilities that might occur from this treatment." That contract lists a price of $405 for the protection of a building against the attack of termites.

In addition, the state attached to its memo a notice from Allied Pest to its customers which instructed them to remit $25 "so that we may schedule your property for inspection and chemical treatment. This will protect your property *and keep your warranty alive.*" (Emphasis added.)

The trial court found against Allied Pest on each of the two issues reserved for review. It is from this judgment that appellants now appeal.

Appellants' first assignment of error states:

"The trial court erred in concluding that the solicitation and sale of pest control inspection services and pest control treatment services is a consumer transaction and that Administrative Code Section 109:4–3–05 is applicable."

■ Allied Pest argues that the trial court had insufficient evidence upon which to base its holding that the services provided by Allied Pest comprised consumer transactions. We disagree in light of the previous consent judgment to the contrary.

As part of the consent judgment, Allied Pest agreed that it was engaged in consumer transactions governed by the Consumer Sales Practices Act and Ohio Adm. Code 109:4–3–01 *et seq.*, which includes 109:4–3–05, the repairs or services rule.

In *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 129, 512 N.E.2d 956, 959, the Supreme Court explained the effect of a consent judgment upon subsequent proceedings.

"[W]e have said, in *Horne v. Woolever* (1959), 170 Ohio St. 178 [10 O.O.2d 114, 163 N.E.2d 378] * * * that as a general rule, a consent judgment operates as *res judicata* with the same force given to a judgment entered on the merits in a fully adversarial proceeding. * * * Implicit in the rule is the recognition that a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment." (See, also, *Ohio State Medical Bd. v. Zwick* [1978], 59 Ohio App.2d 133, 13 O.O.3d 178, 392 N.E.2d 1276.)

Therefore, the trial court properly reasoned: "This Court will not take the inconsistent position of finding the treatment to be a consumer transaction for purposes of the consent judgment in this case and now define the same treatment as a fixture, as Defendant urges."

Appellants' first assignment of error is overruled.

■ Appellants' second assignment of error states:

"The trial court erred in concluding that the appellants' limited warranty was illusory and thereby an unfair, deceptive and/or unconscionable act or practice in violation of R.C. 1345.02(A) and/or 1345.03(A)."

R.C. 1345.02(A) prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction. R.C. 1345.02(B) lists specific acts and practices which are characterized as "deceptive," and it is well settled that the "commission of any listed act or practice is deceptive and violative of the Act." *Clayton v. McCary* (N.D.Ohio 1976), 426 F.Supp. 248, 259.

The instant allegations against Allied Pest focus on R.C. 1345.02(B)(10), which indicates that the following is a deceptive practice: "That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

In reference to this alleged violation, the trial court noted:

"Although bold face type [within the contract between Allied Pest and its customer] indicates services are guaranteed, the explanatory language is, in substance, a waiver or limitation of liability. In essence, Allied Pest agrees to retreat the premises when their services are ineffective, but Allied Pest in no way guarantees its original work. * * * Here, within the document itself, a warranty is boldly noted and subsequently carved away." (Decision Answering the Issues Reserved for Declaratory Judgment in the Affirmative, at 5–6.)

In addition to the misleading label of "guarantee," Allied Pest engaged in the practice of mailing notices to customers encouraging them to pay a $25 fee for a yearly retreatment and continued warranty. Such a notice reinforces the notion that some type of warranty does, in fact, exist. However, we find, as did the trial court, that the ostensible warranty or guarantee is illusory.

It has been held that "[a]n act is deceptive if it 'has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 158, 521 N.E.2d 1099, 1104. We find that the guarantee in question and the notice regarding the continuation of warranty have the effect of lulling the consumer into believing that the services offered by Allied Pest are somehow guaranteed when such is not the case. The only remedy of the consumer is a retreatment of the premises. Upon envisioning the worst case scenario, it is possible that even after pest treatment by appellants, the home of a consumer could be thoroughly destroyed by termite damage. Nonetheless, pursuant to appellants' "guarantee," the sole recourse of the consumer would be to request that appellants come and retreat a mass of rotten and useless wood which had formerly comprised the consumer's home. This "guarantee" does not even permit the refund of a consumer's original investment. Such a remedy is clearly inadequate.

Allied Pest's "guarantee" is akin to that described in *Kusens v. Bodyguard Rustproofing Co.* (June 26, 1980), Cuyahoga App. No. 41202, unreported, 23 O.O.3d 440, wherein defendant-appellant issued a warranty permitting it the option of repairing any rust damage subsequent to its treatment or refunding the cost of the rustproofing. The court proposed this example to illustrate the illusory nature of the warranty:

"A buys a car but does not have it rustproofed. The car rusts and A pays $233.00 to have it repaired. B buys a car, pays $79.00 to have it rustproofed. The car rusts, B gets a $79.00 refund and pays $233.00 to have it repaired. A and B are in identical positions because B's warranty is so limited that he obtains no benefit at all from his contract for rustproofing. The warranty is so limited as to make it illusory."

The documentation supplied to consumers by appellant is designed to create the appearance that services rendered by appellant are somehow under warranty. As we have discussed, such an appearance is illusory and deceptive. We hold that the practices of appellants are in violation of R.C. 1345.02(B)(10).

The complaint against appellants also includes claims that their business practices are unconscionable pursuant to R.C. 1345.03(A) and, in particu-

lar, R.C. 1345.03(B)(5), which sets forth the following as a circumstance to be considered in determining whether a given practice is unconscionable: "Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier."

We note here that "unlike the deceptive sales provision, commission of any of the listed acts does not in and of itself constitute a violation of the Act. Rather, * * * such acts are only circumstances to be considered in determining whether an act or practice is unconscionable." *Clayton v. McCary, supra,* 426 F.Supp. at 260–261. Therefore, our review must focus upon whether the decision of the trial court was against the manifest weight of the evidence.

We look to the standard set forth in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276, to guide our analysis: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

This court has held that "scienter is a necessary element which must be proven prior to an unconscionable act being found under R.C. 1345.03." *Bierlein v. Bernie's Motor Sales, Inc.* (June 12, 1986), Montgomery App. No. 9590, unreported, 1986 WL 6757. In that opinion, we quoted the legislative definition of "knowledge" as "actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual acted with such awareness."

In its decision, the trial court cites the following evidence from which appellants' knowledge of their wrongdoing may be inferred: "Defendant undisputedly is aware of language which appears on preprinted contracts which Allied routinely gives to its customers." (Decision Answering the Issues Reserved for Declaratory Judgment in the Affirmative, at 7–8.) Indeed, the party who drafts a contract is generally chargeable with knowledge of its contents. Therefore, we cannot say that the inference of appellants' knowledge drawn by the trial court was against the manifest weight of the evidence.

As to the allegation that appellants' contract was substantially one-sided, the trial court, citing *Gordon v. Crown Central Petroleum Corp.* (N.D.Ga. 1976), 423 F.Supp. 58, 61, explained that "unconscionability is generally recognized to include the absence of meaningful choice on the part of one of the parties." Further, the trial court found appellants' "retreatment only"

remedy to be "undoubtedly one-sided. It not only limits Allied Pest's liability for ineffective services done the first time, but also limits the consumer's remedy in that if [*sic* ] forces the consumer to again deal with a company who has not effectively performed the work the first time." (Decision Answering the Issues Reserved For Declaratory Judgment in the Affirmative, at 7.)

In light of our discussion, *supra,* regarding the illusory nature of the contract, we must agree with the trial court that the contract is entirely one-sided.

Appellants' second assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.