OPINION
Defendant-appellant Keith Kirkman, d.b.a. Kirkman's Plumbing Eel Service, Inc. ("Kirkman") appeals a judgment for plaintiff-appellees Mark and Bobbie Wiseman on their claims against him in connection with work he performed in replacing their water softener.
Kirkman argues that the judgment is against the manifest weight of the evidence because the written estimate between the parties did not include the cost of the specially ordered softener. He also contends that the court erred by awarding the Wisemans $150 in actual damages (the price difference between the softener the Wisemans paid for and the one they received). He next claims that he did not violate Ohio's Consumer Sales Practices Act ("CSPA") by installing a different brand softener than agreed to by the parties, because the two products are identical in all material respects. Finally, he claims that he didn't violate the CSPA by unnecessarily modifying the Wisemans' existing plumbing, because his actions were based upon a good faith belief that the plumbing violated state law.
We further conclude that the judgment is not against the manifest weight of the evidence, because the terms of the estimate demonstrate the softener cost was part of the agreed price. We conclude that the court did not abuse its discretion by awarding $150 in actual damages to the Wisemans, since Kirkman received this softener at a reduced price from the wholesaler, but did not credit the Wisemans with the reduction in cost resulting from his substitution of a softener other than the one the Wisemans had contracted to have installed.
Finally, we conclude that the trial court correctly determined that Kirkman violated the CSPA by installing a product that he knew to be other than the product the Wisemans had agreed to purchase, and by performing unnecessary repairs that were outside the scope of the contract. It was within the trial court's province to judge the credibility of witnesses and evidence presented. Based on the record before us, the court could decide that the two softeners were not identical in every material respect, and that someone of Kirkman's years of experience should know that no modifications were required to install the softener in a lawful manner. Since both of these practices have previously been adjudged to be deceptive, the court properly trebled damages and awarded the Wisemans their attorney fees under R.C. 1345.09. Accordingly, the judgment of the trial court is affirmed.
 I
Wiseman called Kirkman to have a leaking water softener replaced. Kirkman recommended that Wiseman purchase a McClean water softener. Wiseman then received a written estimate for the softener replacement, which stated that it would cost no more than $1,819.79. Wiseman immediately paid $1,341.74 because the softener was a "special order" item requiring advanced payment.
Kirkman and an associate later came to the Wiseman home to replace the softener. Several hours after arriving, however, the softener was still not installed. Instead, existing plumbing had been ripped out and rerouted due to Kirkman's mistaken belief that it violated the law.
After installing the softener, Kirkman contacted the Wisemans and requested that he be allowed to come to their home to present the final bill, which exceeded the estimate by over a thousand dollars. Mr. Wiseman, distracted by the illness of one of his children and the impending need to decide whether, in view of the illness, the family should go ahead with a planned trip, paid the bill immediately.
Wiseman later learned that his water softener was not a McClean softener, but an Oh So Soft softener. He contacted Kirkman and complained not only that he had been overcharged but that he also had not received the right softener. The parties were unable to resolve the issue, so the Wisemans brought suit against Kirkman, alleging numerous violations of Ohio's CSPA, R.C. 1345.01 et seq.
After a hearing on the matter, the trial court found as follows:
 "On the issue of the contract between the parties, it is the finding of this Court that the estimate submitted by Kirkman's [sic] in the sum of One Thousand Eight Hundred Nineteen and 79/100 Dollars ($1,819.79) included the cost of the water softener and therefore, [the Wisemans] are entitled to a refund of One Thousand Two Hundred Seventy-five and 12/100 ($1,275.12) plus Two Hundred Forty and 00/100 Dollars ($240.00) for the unnecessary plumbing and difference in price of water softeners for a total refund of One Thousand Five Hundred Fifteen and 12/100 Dollars ($1,515.12).
"As to the issue to whether or not [Kirkman] violated the Ohio Consumer Sales Practices Act, the Court finds that [Kirkman] ha[s] violated Ohio Consumer Sales Practices Act in two (2) areas: (1) Charging the [Wisemans] for modification of their soft water plumbing on the basis that hard water may not be supplied to outside outlets, and (2) that the McClean water softener was not installed, but in fact an Oh So Soft water softener was installed. The difference in damages to the [Wisemans] for those two (2) items was Ninety and 00/100 Dollars ($90.00) for the parts and labor for Mr. Kirkman's re-routing of the water softening plumbing and One Hundred Fifty and 00/100 Dollars ($150.00) as to the difference in the value of these two units. The Ohio Consumer Sales Practice Act allows for punitive damages based upon treble damages to actual damages and therefore, [the Wisemans are] awarded Seven Hundred Twenty and 00/100 Dollars ($720.00) as treble damages.
"[The Wisemans] have further requested attorney fees in the sum of Three Thousand Five Hundred Fifty-nine and 27/100 Dollars ($3,559.27). The Court finds that those attorney fees as testified to by Attorney Jason R. Aslinger as being reasonable, usual and customary concerning the complexity of the Ohio Consumer Sales Practices Act and by reason of [Kirkman's] violation of the Ohio Consumer Sales Practices Act as found by this Court above awards [the Wisemans] the sum of Three Thousand Five Hundred Fifty-nine and 27/100 Dollars ($3,559.27) as further damages. Total of Five Thousand Seven Hundred Ninety-four and 39/100 Dollars ($5,794.39) is therefore awarded to [the Wisemans] against [Kirkman]."
From that judgment, Kirkman appeals.
 II
Kirkman's first and third assignments of error relate to the trial court's determination that the Wisemans overpaid for the installation of their softener. These assignments of error are as follows:
 "THE TRIAL COURT'S FINDING THAT THE CONTRACT PRICE AGREED UPON BY THE PARTIES INCLUDED THE COST OF THE INSTALLED SOFTENING UNIT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE"
 "THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFFS SUFFERED $150 IN ACTUAL DAMAGES BASED ON A DIFFERENCE IN WHOLESALE SELLING PRICES OF IDENTICAL PRODUCTS"
As to Kirkman's first assignment of error, when considering manifest weight arguments, we "review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof."Howard v. Howard (Mar. 20, 1998), Montgomery App. No. 16542. It is well-established that we cannot substitute our judgment for that of the trial court in reviewing the judgment of the trial court. It is the trial court's function as the trier of fact to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence presented. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273. A judgment that is supported by some credible, competent evidence that goes to all of the essential elements of the case is not against the manifest weight of the evidence. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280,376 N.E.2d 578.
Kirkman argues that the estimated contract price was intended to provide a range for the expected costs to install the special-ordered, prepaid softener — but did not include the costs of the softener. He contends that the extrinsic evidence surrounding the performance of this contract supports a finding that the estimate covered only labor for installation, not the cost of the softener. But the trial court disagreed, and so do we.
The estimate provides:
 "PROPOSED ESTIMATE FOR: To install a new McClean twin tank 45,000-grain water softener in place of the old water softener with any parts needed and labor needed to do the installation of this new water softener * * * This contract is used to protect you as the customer and give you advance notice of our typical charges. The Time and Material Contract also gives us guidelines in doing our work for you. Please understand that this job will be done on a Time and Material Contract bases only. The LOW ESTIMATE is $1,619.79 [.] The HIGH ESTIMATE is: $1,879.79. This estimate includes: All of the aforementioned items in the second paragraph of this letter starting with the words PROPOSED ESTIMATE FOR, [p]lease refer to that paragraph. * * * Since this water softener is not a regularly stocked item we are asking you to pay for the water softener before we install it. This [sic] the same as a special ordered item would be handled. We have it ordered after you verbally authorize it by phone to do so; on Thursday, January 4, 2001. It should be in some time next week. The price of the water softener is $ 1,265.79 and with tax $ 75.95 and the total price is $ 1,341.74." (Emphasis in original).
When the terms of a written agreement are clear and unambiguous, their interpretation is a matter of law to be decided by the court. State exrel. Parsons v. Fleming, 68 Ohio St.3d 509, 1994-Ohio-172, 628 N.E.2d 1377. Only when language is ambiguous and intent cannot be determined from within the four corners of the document, may the trier of fact make a factual determination based on an examination of extrinsic evidence. Id.
Contrary to Kirkman's protestations, a reading of the contract shows it is not ambiguous. Thus, no extrinsic evidence may be examined. By its very terms, the estimate states that all items mentioned in the second paragraph, which includes a description of the softener, are covered within the quoted price. Accordingly, the estimate covers both the costs of installation and the price of the water softener, and the judgment of the trial court that the Wisemans are entitled to a refund for the amount that they paid over the agreed price is not against the manifest weight of the evidence. Kirkman's first assignment of error is overruled.
In Kirkman's third assignment of error, he asserts that the trial court erred by awarding excessive damages. He claims that the court's award of $150 actual damages (the approximate wholesale price difference between the Oh So Soft and McClean softeners) was not justified, because the two units were identical with no actual or material difference. Thus, according to Kirkman, the Wisemans failed to show that they were overcharged, since they essentially received the benefit of their bargain.
The award of damages that appear to be necessary falls within the sound discretion of the trial court. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 300, 741 N.E.2d 155, 195. As a result, our review is for abuse of discretion. Id. This means we will affirm unless we find the trial court's attitude "unreasonable, arbitrary or unconscionable." Id.
Decisions are unreasonable if they are not supported by a sound reasoning process. Id.
Based on our review of the record, we cannot say that the court's decision is not supported by a sound reasoning process. Duane Newman, Kirkman's own witness, testified that the Oh So Soft softener retailed for $150-$200 less than the McClean softener the Wisemans paid for and thought they were purchasing:
 "Q. [Wiseman's attorney] Okay. How would the price of the softener, the Oh, So Soft softener that you delivered to Mr. Kirkman compare with the identical McClean system?
 "A. [Newman] Probably roughly 150, 200 bucks difference in price higher.
 "Q. And that would be the difference in price that you would charge to the plumber.
 "A. That we would save him, yes. We would save him money by doing it that way."
The trial court's damage award is logical. Even if the Oh So Soft and McClean water softeners were manufactured to identical specifications, they were manufactured by different manufacturers, with differing reputations for quality, support, and ability to respond to products liability claims, which may account for the difference in wholesale price. It was unconscionable for Kirkman to contract to provide one brand of water softener, substitute a cheaper brand, and retain the profits from his wrongful act. Kirkman's third assignment of error is overruled.
 III
Kirkman's second and fourth assignments of error deal with the court's determination that he violated the CSPA. These assignments of error are as follows:
 "THE TRIAL COURT ERRED BY FINDING THAT DEFENDANTS VIOLATED THE OHIO CONSUMER SALES PRACTICES ACT BY SUPPLYING AN `OH SO SOFT' BRAND WATER SOFTENER RATHER THAN A `McCLEAN' BRAND WATER SOFTENER WHEN THE TWO SOFTENER UNITS ARE IDENTICAL IN EVERY MATERIAL RESPECT"
 "THE TRIAL COURT ERRED BY FINDING THAT DEFENDANTS VIOLATED THE OHIO CONSUMER SALES PRACTICES ACT BY PERFORMING A MODIFICATION OF PLAINTIFFS' PLUMBING BASED ON A GOOD FAITH BELIEF THAT PLUMBING SOFT WATER TO OUTSIDE USES WAS A VIOLATION OF STATE PLUMBING CODE"
Kirkman first contends that the trial court erroneously found that he violated the CSPA by installing an Oh So Soft softener instead of the McClean brand ordered by the Wisemans. He claims this does not amount to a deceptive sales practice because the two softeners were identical in every material respect — the only difference being the brand name. He next contends that the trial court erred in finding that Kirkman's modification of the Wisemans' plumbing, based upon his erroneous belief that it violated state law, constituted a violation of the Act. These arguments are not well-taken.
R.C. 1345.02(A) prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction.State ex rel. Celebrezze v. Ferraro (1989), 63 Ohio App.3d 168, 171,578 N.E.2d 492, 494. R.C. 1345.02(B) lists specific acts and practices which are characterized as "deceptive," and it is well settled that the "commission of any listed act or practice is deceptive and violative of the Act." Id. These acts include:
 "(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
 "(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
"* * *
"(7) That replacement or repair is needed, if it is not * * *."
 "The sole purpose of the Act is to protect consumers and eradicate deceptive trade practices, which necessarily entails a liberal interpretation of the Act to effectuate the legislative intent." Fletcher v. Don Foss of Cleveland, Inc. (1993), 90 Ohio App.3d 82, 87, 628 N.E.2d 60, 63. Proof of knowledge or intent is not an element of a CSPA claim unless the Act requires it. To prevail under the Act, the consumer need only prove facts establishing a practice or act described by the language of the statute. Under the statute's provisions, "an act has a tendency to deceive if it is (1) at variance with the truth and (2) material or likely to be material to a consumer's decisions to purchase the product * * *." Cranford v. Joseph Airport Toyota, Inc.
(May 17, 1996), Montgomery App. No. 15408.
To avoid liability for selling the wrong brand of softener to the Wisemans, Kirkman argues that installing the wrong product does not violate the Act because:
 "In order to be deceptive, and therefore actionable, a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved. A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not `deceptive' within the meaning of the Consumer Sales Practices Act or a basis for the relief that if offers, even though it is objectively untrue." Cranford, supra.
He reasons that because Wiseman did not know the McClean brand when he sought a softener, the McClean brand was not material to his decision to purchase, under Cranford. Kirkman's reliance uponCranford is misplaced.
Although Kirkman presented evidence that the two softeners are identical in every material respect, the trial court as the finder of fact could have determined that the two were not identical based on the price difference between them. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Moreover, as to Kirkman's contention that the brand of the softener was immaterial to the transaction, we disagree. Kirkman may not espouse the virtues of a particular softener brand, only to argue later that the parties should not have placed stock in his recommendations. Although Wiseman was not aware of McClean softeners before his relationship with Kirkman, he relied upon Kirkman's plumbing expertise when determining which softener to buy. It is common sense that an expert's recommendations regarding an expensive home product may be material to a consumer's decisions regarding which product to purchase.
Kirkman also claims that he is not liable under the Act for modifying existing plumbing based on his good faith belief that the existing plumbing violated state law. Again we conclude that Kirkman's actions amount to a violation of the Act. It was within the trial court's discretion to find that Kirkman, an experienced plumber, should have known that the existing plumbing did not violate the law, and, in any event, a vendor's knowledge of the falsity of his representation that a repair is necessary is not a requirement for a violation of the Act. All that is required is that the vendor falsely represent that a repair is necessary. The Act exists for the protection of the consumer, not the vendor, and the risk that the vendor's representation will prove to be false is borne by the vendor, not the consumer.
Kirkman next contends that even if his actions are in violation of the CSPA — they were the result of a bona fide error under R.C. 1345.09
due to the fact that he didn't know that he had not installed a McClean softener until later and that he believed that existing plumbing needed to be replaced; thus, the court erred by trebling damages and awarding the Wisemans attorney's fees pursuant to R.C. 1345.09. He cites Hahn v.Doe (Mar. 23, 1995), Franklin App. No. 94APE07-1024 to support this position.
Under R.C. 1345.09, a prevailing consumer may recover treble damages and attorney fees if the violation was "either (1) an act or practice declared to be deceptive or unconscionable by a rule adopted by the Attorney General pursuant to R.C. 1345.02(B)(2) prior to the commission of the violation in question, or (2) an act or practice determined to violate R.C. 1345.02 or 1345.03 by a previous Ohio court decision, provided the decision had been made available for public inspection by the Attorney General pursuant to R.C. 1345.05(A)(3) prior to the commission of the violation in question." Hahn, supra.
A previous court decision available for public inspection by the Attorney General prior to this alleged violation determined that a seller's representation that goods installed in a consumer's home were the goods previously ordered, when in fact they were not, is a violation of Ohio's CSPA. Clyde's Carpet, Inc. v. Banas (Oct. 11, 1990) Maumee M.C. No. CV-90-F-315. Additionally, the Attorney General has declared that it is a deceptive act to "represent that repairs or services are necessary when such is not the fact." OAC 109:4-3-05(D)(8).
To avoid additional liability through application of Clyde's Carpet,Inc., Kirkman cites Hahn, supra, to show that he was not on notice that his actions constituted a violation of the CSPA. But his reliance uponHahn is misplaced. Here, contradictory evidence was presented regarding when Kirkman learned that the softener was not the one ordered by the Wisemans. In fact, Kirkman's own secretary testified that he knew that the softener was not a McClean prior to installation:
 "Q. [Wiseman's counsel] * * * Let me go back to the McClean unit or the non-McClean unit. At what point were you — if you know, was Kirkman's informed that Hughes Supply was not providing the McClean unit that was ordered?
 "A. [Kirkman's secretary] The day they picked it up to go to deliver it to install it.
 "Q. So when they — when Mr. Kirkman and Mr. Young went to pick up the unit, they said this is what we're giving you and it's the same or better than a McClean?
 "A. I don't know. I can't say that's what they told them. But when they went to pick it up, that's when they found out it wasn't the McClean."
Based upon our review of the record, we conclude that the trial court did not abuse its discretion by crediting Kirkman's secretary's testimony and granting treble damages and attorney fees to the Wisemans pursuant to R.C. 1345.09 — since Kirkman was on constructive notice that his actions constituted a violation of the CSPA, under Clyde's Carpet, Inc.
Further, although Kirkman claims that he did not know that the plumbing need not have been modified, he does not dispute that he performed an unnecessary repair and that an existing rule promulgated by the Attorney General deems these actions to be deceptive for purposes of imposing treble damages and attorney fees. Thus, the trial court properly imposed these damages under R.C. 1345.09.
Accordingly, Kirkman's second and fourth assignments of error are overruled.
 IV
All of Kirkman's assignments of error having been overruled, the judgment of the trial court is affirmed.
BROGAN and YOUNG, JJ., concur.