OPINION
{¶ 1} Prime Time Marketing Mgmt., Inc., d.b.a. UCC TotalHome of Dayton ("UCC"), appeals from a judgment of the Montgomery County Court of Common Pleas, which found that it had committed a violation of the Consumer Sales Practices Act ("CSPA") and had breached its contract with Donald and Wanda Knoth. The trial court awarded damages to the Knoths in the amount of $14,755.95 and attorney's fees in the amount of $14,715.
 {¶ 2} UCC is a franchise of a company that allows its members to purchase goods directly from the manufacturers of such goods at wholesale or discounted prices. In 1999, the Knoths joined UCC at a cost of $2,460. UCC's consumer guide and membership agreement stated that estimated delivery times were provided by the manufacturers and that delays were possible with any custom order. It also stated that UCC had no control over the actual delivery times.
 {¶ 3} In April 2000, the Knoths placed an order for custom-made Natuzzi furniture, which is manufactured in Italy. They paid in full at the time of the order in the amount of $4,918.65 and were given an estimated delivery date of October 2000. The furniture did not arrive by October. The Knoths were subsequently told by UCC that the furniture would arrive in November and then by December 18, 2000.
 {¶ 4} When the furniture still had not arrived at the end of December, the Knoths attempted to cancel their order. The furniture arrived at UCC in February 2001, and the Knoths refused to take delivery. UCC, however, refused to refund the purchase price because the contract stated that cancellation could occur only with the manufacturer's consent.
 {¶ 5} On March 28, 2001, the Knoths filed a complaint against UCC for a violation of the CSPA and for breach of contract, along with other causes of action. UCC filed a counterclaim for breach of contract. The Knoths filed a motion for summary judgment, and UCC filed a memorandum in opposition to the motion. The trial court granted the motion for summary judgment with respect to the Knoths' CSPA and breach of contract claims. Specifically, the trial court found that UCC had committed a CSPA violation because its delivery estimations were "at variance with the truth" and the delivery time had been material to the Knoths' decision to order the furniture. In accordance with R.C. 1345.09(B), the court awarded damages for the CSPA violation in the amount of $14,755.95, which was three times the actual damages of $4,918.65. The trial court also awarded attorney's fees of $14,715, an amount that the parties had stipulated was reasonable. Because the CSPA damages were calculated based on the contract price, no additional damages were awarded on the breach of contract claim.
 {¶ 6} UCC raises one assignment of error on appeal.
 {¶ 7} "The trial court erred in sustaining the plaintiffs/appellees[`] motion for summary judgment in part."
 {¶ 8} UCC raises three arguments under this assignment of error. First, UCC contends that the trial court erred finding that it had violated the CSPA. It claims that it had merely passed along estimated arrival dates from the manufacturer and that its membership agreements had made it clear that UCC had no control over delivery times. Thus, UCC claims that the trial court should not have granted summary judgment on the Knoths' CSPA claim.
 {¶ 9} R.C. 1345.02(A) states:
 {¶ 10} "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."
 {¶ 11} The statute provides a list of representations that are considered to be deceptive, but the list does not limit the scope of R.C. 1345.02(A). R.C. 1345.02(B). UCC's alleged violation is not one of those listed in R.C. 1345.02(B).
 {¶ 12} Although the CSPA uses the words "unfair" and "deceptive", a consumer is not required to demonstrate that a supplier intended to be unfair or deceptive. Frey v. Vin Devers,Inc. (1992), 80 Ohio App.3d 1, 6, 608 N.E.2d 796. See, also,Meade v. Nelson Auto Group (March 31, 1997), Union App. No. 14-96-45, unreported. "It is how the consumer views the act or statement which determines whether it is unfair or deceptive." (Citations omitted.) Frey, 80 Ohio App.3d at 6. The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract. Thompson v. Jim Dixon LincolnMercury, Inc. (April 27, 1983), Butler App. No. 82-11-0109. Whether any given acts or practice may be unfair or deceptive is an issue of fact to be decided from all the relevant facts and circumstances in the particular case. Swiger v. Terminix Intern.Co. (June 28, 1995), Montgomery App. No. 14523.
The Knoths claim that it was unfair and deceptive for UCC to represent to them at the time of their order that their furniture would be delivered in October 2000, and to thereafter assure them that the furniture would come in November and in December 2000, when in fact the furniture could not be delivered until February 2001. They also contend that there was no genuine issue of material fact as to whether these actions violated the CSPA. In response, UCC contends that it merely passed along the manufacturer's delivery estimates and that it had no control over these estimates, as stated in its membership agreement and consumer guide. It also asserts that some of the delay was attributable, at least in part, to the Knoths' aborted attempt to cancel their furniture order in July 2000.
 {¶ 13} To address this argument, we must address the affidavit of UCC employee Dell Craaybeek, which was offered in opposition to the Knoths' motion for summary judgment. The Knoths filed a motion to strike portions of that affidavit on the ground that it relied on hearsay, which is inadmissible in evidence and therefore is not properly offered in opposition to a motion for summary judgment. Civ.R. 56(E). It is fundamental that the evidence offered by affidavit in support of or in opposition to a motion for summary judgment must also be admissible at trial, albeit in a different form, in order for the court to rely on it.Felker v. Schwenke (1998), 129 Ohio App.3d 427, 431,717 N.E.2d 1165; Allin v. Hartzell Propeller, Inc., Miami App. No. 02CA57, 2003-Ohio-2827, at ¶ 25.
 {¶ 14} The trial court granted the motion to strike with respect to the four paragraphs cited below:
 {¶ 15} "12. At this time [when the furniture was ordered in April 2000] an estimated shipping date of October 4, 2000 was given to the Knoths. This was estimated and not an actual delivery date. This date was also provided by the manufacturer of the furniture and not UCC TotalHome of Dayton. Natuzzi furniture usually takes twenty-two weeks to be delivered.
 {¶ 16} "* * *
 {¶ 17} "15. On or about July 25, 2000 the Knoths contacted UCC TotalHome of Dayton to cancel their Natuzzi furniture order. This caused a delay in the filling of the Knoth's furniture order, and caused the estimated delivery date to be moved by the manufacturer.
 {¶ 18} "* * *
 {¶ 19} "18. Thereafter, the manufacturer estimated the shipping date as November of 2000 and December 26, 2000.
 {¶ 20} "* * *
 {¶ 21} "20. Thereafter the manufacturer issued an exact shipping date of February 18, 2001."
 {¶ 22} The Knoths claimed that these statements were hearsay because they attempted to convey what the manufacturer had told UCC. UCC claims that the information was not offered to prove the truth of the matter asserted but as the basis for Craaybeek's conclusions about the reasons for the delays.
 {¶ 23} Hearsay is "a statement, other than one made by the declarant, offered into evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the exceptions enumerated in the rules of evidence. Evid.R. 802. The trial court struck portions of Craaybeek's affidavit relating to the manufacturer's representations about the delivery dates on the basis that the manufacturer's statements were hearsay and that conclusions drawn from hearsay evidence are also hearsay.
 {¶ 24} The trial court struck more than was necessary to address the hearsay problem in Craaybeek's affidavit, but some portions of the affidavit were properly stricken. Paragraphs 18 and 20, as well as the first and third sentences of paragraph 12, were hearsay because they imparted what UCC had been told by the manufacturer. Insofar as the Knoths had acknowledged the original October 4, 2000 delivery date themselves, however, the hearsay in paragraph 12 was inconsequential. The second sentence of paragraph 15 was properly stricken as hearsay or as information about which Craaybeek had no personal knowledge. The second and fourth sentences of paragraph 12 and the first sentence of paragraph 15 were not hearsay. However, we believe that UCC suffered no harm from the fact that three of the stricken sentences were not, in fact, hearsay.
 {¶ 25} Considering those portions of Craaybeek's affidavit that were not hearsay, we must determine whether UCC had presented enough evidence to create a genuine issue of material fact as to whether there had been a violation of the CSPA. There is no evidence that the Knoths contributed to any delay in the delivery of their furniture. As such, we must analyze the interplay between UCC's representations to the Knoths about when the furniture would arrive and its assertions in Craaybeek's affidavit, in the parties' agreement, and in UCC's consumer guide that it had no control over delivery from manufacturers. The trial court concluded that there was no genuine issue of material fact as to whether UCC had violated the CSPA in assuring the Knoths that their furniture would be delivered in about six months, even if that timeline was characterized as an estimation, when in fact the furniture would not be delivered for ten months.
 {¶ 26} CSPA violations are commonly found to have occurred in situations where a representation was made to the consumer that was untrue at the time it was made, regardless of whether the supplier or his agent knew that the representation was untrue. For example, a deceptive act was found where a car salesperson referred to a nonexistent manufacturer's suggested retail price during sales negotiations for a used car, where no such suggested price exists for used cars. Cranford v. Joseph Airport Toyota,Inc. (May 17, 1996), Montgomery App. No. 15408. Similarly, the suggestion that a guarantee was in place for pest control services when, in fact, there was no guarantee, was found to be a deceptive practice in State ex rel. Celebreeze v. Ferraro
(1989), 63 Ohio App.3d 168, 578 N.E.2d 492. In these types of cases, the deception is apparent, or could have been discovered, at the time the parties enter the agreement.
 {¶ 27} UCC's situation is slightly different because its claims about when the Knoths' furniture would be delivered were not necessarily inaccurate projections when first made. Moreover, UCC appears to have been passing along information from the manufacturer. For these reasons, along with the disclaimers of having any control over delivery times contained in its documents, UCC contends that it did not commit a CSPA violation in telling the Knoths of the various delivery times.
 {¶ 28} Reliance on a manufacturer does not necessarily absolve a supplier of responsibility for representations that it makes to its customers. For example, in Robinson v. ValitonMotors, Inc. (Dec. 7, 1979), Lucas App. No. L 79-085, the purchaser of a new automobile was promised delivery in four to five weeks after she discussed with the salesman the importance to her of having a car by that time. The automobile did not arrive at the dealership until nine weeks later. The dealership argued that it had not been deceptive in failing to deliver the car within the specified time because it had had no control over the lead time required to manufacture the car. The trial court disagreed, reasoning:
 {¶ 29} "The circumstance that the defendant-appellant, as a supplier and automobile distributor, may not be in a position to determine the lead time involved in the manufacture of an automobile, for which he takes a written purchase order, is one that may bear upon the inadvisability of making an affirmative material representation of the delivery date. Where, however, the evidence, nevertheless, supports a charge that such representation was made, notwithstanding the knowledge by the maker thereof of such circumstance and made directly in face thereof, it cannot, at one and the same time, qualify as a defense to a charge of being a deceptive act * * *."
 {¶ 30} On the other hand, it is undisputed in this case that the Knoths received a least two written notices that delivery dates were estimates provided by the manufacturer, that delays were possible with custom orders, and that UCC had no control over actual delivery times. This raises a question about whether the Knoths could have been deceived by UCC's affirmative representations about when the furniture would be delivered. The question involves both the Knoths' subjective understanding of UCC's representations and a determination of how a reasonable consumer in their position would have understood the representations based on the facts and circumstances of the case.
 {¶ 31} In our view, UCC's written disclaimers of responsibility for the delivery dates created a genuine issue of material fact as to whether it had been deceptive in conveying those dates to the Knoths. Although "[i]t is how the consumer views the act or statement which determines whether it is unfair or deceptive," Frey, 80 Ohio App.3d at 6, we are of the opinion that the consumer's perceptions must also be reasonable ones under the circumstances. UCC's representations were not unfair or deceptive if a reasonable consumer would not have been misled because of the written disclaimers that UCC had provided. Thus, under the facts of this case, whether UCC's representations to the Knoths' were deceptive presents a question of fact that must be resolved by a jury. The trial court erred in granting summary judgment on this issue.
 {¶ 32} UCC also claims that the trial court erred in finding that the delay in delivery of the furniture had breached its contract with the Knoths. UCC reiterates its argument that it did not control the manufacture and delivery dates, but merely communicated them to its customers, and that the Knoths were partially responsible for the delay because they had attempted, at one point, to cancel their order.
 {¶ 33} The trial court noted that, under Ohio law, contracts must be performed in good faith and completed within a reasonable time. R.C. 1301.09, R.C. 1301.10, and R.C. 1302.22(A). In April 2000, UCC provided the Knoths with an estimated delivery date for their furniture of October 2000. The furniture did not arrive at UCC's local facility until February 2001, four months after the time that the Knoths had originally expected to receive the furniture. Although UCC blamed the Knoths for this delay, it failed to present any admissible evidence to support its claim that the Knoths' actions had contributed to the delay.
 {¶ 34} The trial court reasonably concluded that UCC had breached its contract with the Knoths by offering the furniture for delivery four months after the estimated delivery date that it had given them when the contract was signed. See Martinez v.Decorators Warehouse, Inc. (Dec. 15, 1983), Cuyahoga App. No. 46873 (holding that six week delay in delivery of furniture constituted breach of contract). The Knoths assert, in Mr. Knoth's affidavit, that they would not have ordered the furniture from UCC in April 2000 if they had known that it would not be delivered until February 2001. Moreover, the length of the delay was significant. We reject UCC's argument that the trial court erred in finding a breach of contract.
 {¶ 35} Finally, UCC argues that the Knoths should not have been awarded attorney's fees pursuant to R.C. 1345.09(B) and (F)(2). This argument is premised on its previous argument that the trial court erred in finding a CSPA violation. Because we will remand this case with respect to the CSPA violation, we will not address the issue of attorney's fees at this time.
 {¶ 36} The assignment of error is sustained in part and overruled in part.
 {¶ 37} The judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings.
Grady, J. and Young, J., concur.